DELUCA, Appellee,

v.

CITY OF AURORA et al., Appellants.

[Cite as *Deluca v. Aurora* (2001), 144 Ohio App.3d 501.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2000–P–0104.

Decided July 9, 2001.

502

*Carlin & Carlin, Nicholas A. Papa* and *William Carlin,* for appellee.

*David M. Benjamin,* Aurora Law Director, for appellants.

GRENDELL, Judge.

The city of Aurora, through Mayor Ralph Keidel, and Robert Paul (collectively referred to as "appellants" in some instances), appeal the September 1, 2000 order and judgment entry by the Portage County Court of Common Pleas granting summary judgment to Richard Deluca ("appellee").

On March 20, 1997, council members for the city of Aurora passed Ordinance No. 1997–58. This ordinance authorized Mayor Keidel and the chair of the finance committee to enter into an employment agreement with Robert Paul, finance director. Soon after, on March 24, 1997, pursuant to the ordinance, Mayor Keidel entered into an employment contract with Robert Paul, commencing March 24, 1997 and ending March 24, 2000, at a salary of $56,000 per year. Both parties were permitted to terminate the contract prior to March 24, 2000. In the event the contract was terminated by either Robert Paul or the city because of "gross or other criminal conduct" by Robert Paul, Robert Paul would receive compensation up to the date of his termination. However, in the event that the city terminated Robert Paul for "any other reason," Robert Paul would receive compensation for the entire three years.

On June 23, 1997, appellee filed a complaint seeking a declaratory judgment, pursuant to R.C. 2721.02, alleging that the ordinance and the employment contract conflicted with Section 6.01 of the Aurora Charter. Appellee argued that the employment contract was void and that the ordinance was unconstitutional because both were in violation of the city's charter.[1]

Subsequently, on July 3, 1997, appellants filed their answer to the complaint, asserting that appellee failed to state a claim upon which relief could be granted, that the trial court lacked subject-matter jurisdiction, and that appellee failed to present a justiciable controversy.

On August 25, 1997, appellee filed a motion to amend his complaint to clarify certain issues and to concisely allege a "taxpayers action" pursuant to R.C. 733.56 and 733.59. The trial court granted appellee's motion to amend the complaint and found that appellee's complaint provided sufficient facts by which the court had subject-matter jurisdiction.

Consequently, on September 18, 1997, appellee filed his amended complaint pursuant to R.C. 733.56, R.C. 733.59 (taxpayer suit), and R.C. Chapter 2721 (declaratory judgment). On September 25, 1997, appellants filed an answer to appellee's amended complaint, asserting the same defenses as in their original answer, failure to state a claim and lack of jurisdiction.

More than two and one-half years after appellee filed his amended complaint, on May 3, 2000, appellants filed a motion to dismiss appellee's lawsuit, or, in the alternative, a motion for summary judgment. The grounds for appellants' motions included appellee's failure to prosecute his case and failure to present a claim for relief. Appellants also asserted that the employment contract at issue terminated on March 21, 2000, and, therefore, the trial court lacked subject-matter jurisdiction to hear a moot issue.

On May 26, 2000, appellee filed objections and a cross-motion for summary judgment in response to appellants' motions. Appellee opined that the trial court was vested with jurisdiction because the issue at hand was capable of repetition and was a matter of public interest. In addressing the delay in litigating his

---

1. The Attorney General was also named as a defendant. On July 3, 1997, the Attorney General filed a motion to dismiss the portion of the complaint naming her as a defendant because appellee was under the mistaken belief that the Attorney General was required to be named as a defendant in a declaratory judgment. R.C. 2721.12 provides: "In any action * * * [that a municipal] ordinance * * * is alleged to be unconstitutional, the *attorney general shall also be served with a copy of the complaint* in the action or proceeding and shall be heard." (Emphasis added.) See *Cicco v. Stockmaster* (2000), 89 Ohio St.3d 95, 728 N.E.2d 1066, and *Ohioans for Fair Representation, Inc. v. Taft* (1993), 67 Ohio St.3d 180, 616 N.E.2d 905. On July 16, 1997, appellee filed a motion to dismiss the Attorney General as a named defendant, and, on the same day, the court filed a judgment entry dismissing the Attorney General as a party.

lawsuit, appellee argued that, although the primary duty was on him to prosecute, it was the trial court's duty to set the matter for trial.

On September 1, 2000, the trial court granted appellee's cross-motion for summary judgment. In so doing, the court denied appellants' motion to dismiss and appellants' motion for summary judgment. The trial court concluded that two provisions of the employment contract conflicted with Section 6.01 of the Aurora Charter; hence, these provisions were invalid and unenforceable to the extent of the conflict. First, the court stated that Section 6.01 allowed the appointment of a finance director for a term concurrent with the mayor's term in office; however, the duration specified in paragraph one of the employment contract went well beyond Mayor Keidel's term in office. Second, the trial court determined that there was a conflict between Section 6.01 and paragraph seven of the employment contract, which allowed Robert Paul continued compensation in the event that he was discharged for any reason, other than gross or criminal conduct. The court reasoned that paragraph seven was burdensome and impinged on a new mayor's discretion to remove the finance director pursuant to Section 6.01. In addressing appellants' claim of mootness, the trial court stated that the issue presented by appellee was more than just a hypothetical concern and was not moot because such illegal employment contracts were likely to be entered into by a future mayor.

Appellants filed a timely notice of appeal asserting the following assignments of error for our consideration:

"[1] The grant of plaintiff's motion for summary judgment was in error where the challenged legislative enactment and employment agreement which it authorized were within the power of Aurora City Council to contract pursuant to section 3.01 of Aurora's City Charter and were therefore not violative of section 6.01 of that charter.

"[2] The denial of defendant-appellants' motion for summary judgment was in error where the challenged legislative enactment and the employment agreement which it authorized were within the power of Aurora City Council to contract pursuant to section 3.01 of Aurora's City Charter [and] were therefore not violative of section 6.01 of that charter, and where the matter had become moot as a result of plaintiff's failure to diligently pursue his litigative claim."

Appellants' assignments of error will be reviewed collectively in view of the fact that they deal with the same issue. In their appellate brief, appellants contend that nothing in the March 24, 1997 employment contract prevented the new mayor, taking office in January 1998, from removing Robert Paul and appointing someone else as the finance director. Appellants also maintain that city council had the authority to legislatively authorize the employment contract pursuant to Section 3.01 of the Aurora Charter and that the employment contract was not in

conflict with Section 6.01 because Section 6.01 should be read *in pari materia* with Section 3.01. Finally, appellants aver that the trial court lacked jurisdiction to grant summary judgment in favor of appellee because the issue had become moot, since the employment contract expired on March 24, 2000.

Briefly, we begin with a taxpayer's right to bring a cause of action in his name on behalf of a municipality. R.C. 733.59 provides:

"If the village solicitor or city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections 733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his own name, on behalf of the municipal corporation. * * *"

Relevant to the instant case, R.C. 733.56 allows a city law director to apply for an order of injunction, in the name of the municipality, to restrain the misapplication of municipal funds, the abuse of municipal powers, or the performance of a municipal contract in violation of the municipality's laws or ordinances. However, if a city law director fails to take such action, a taxpayer may institute a lawsuit on behalf of the municipality pursuant to R.C. 733.59.

In the case before us, the record indicates that appellee's counsel sent a letter to Mayor Keidel concerning the legality of the employment contract in relation to Section 6.01 of the charter. Although appellee's counsel did not forward a copy of this letter directly to the city law director as required by R.C. 733.59, the city law director was informed of the contents of the letter. The record contains a reply letter, dated April 3, 1997, from the city law director to appellee's counsel, assuring appellee's counsel that he expended significant legal efforts to make certain that the employment agreement complied with the city charter and was within city council's contracting power. The city law director also added, "In the event your client nonetheless pursues legal action on this matter[,] I would ask that you favor me with a courtesy copy of all documents filed with the court * * *."

It was evident from the reply letter that the city law director would not take any action on behalf of the city; accordingly, as a taxpayer of the city of Aurora, appellee was vested with the legal right to initiate proceedings on behalf of the city to prevent performance of the alleged illegal employment contract.[2]

---

2. Appellee also initiated this lawsuit pursuant to R.C. 2721.02, which grants a trial court statutory authority to hear a declaratory judgment action brought by a party. A declaratory judgment provides an additional remedy that may be granted by a trial court; however, the subject-matter jurisdiction upon which a court may act is not broadened by this statute. *Jenkins v. Eberhart* (1991), 71 Ohio App.3d 351, 357, 594 N.E.2d 29, 32–33; *Ryan v. Tracy* (1983), 6 Ohio St.3d 363, 367, 6 OBR 416, 419–420, 453 N.E.2d 661, 664–665.

Notwithstanding the right of a taxpayer to initiate proceedings on behalf of a municipality, it is well established that courts do not have jurisdiction to consider moot issues; rather, courts decide actual cases in controversy. *Carver v. Deerfield Twp.* (2000), 139 Ohio App.3d 64, 77, 742 N.E.2d 1182, 1190–1191. However, a court is vested with jurisdiction to address moot issues when such issues are capable of repetition, yet evade review. *State ex rel. Plain Dealer Publishing Co. v. Barnes* (1988), 38 Ohio St.3d 165, 527 N.E.2d 807, paragraph one of the syllabus. A court is also vested with jurisdiction to address moot issues when those issues concern an important public right or a matter of great public or general interest. *In re Suspension of Huffer from Circleville High School* (1989), 47 Ohio St.3d 12, 14, 546 N.E.2d 1308, 1310–1311. Similarly, an appellate court is vested with jurisdiction to review moot issues, provided such exceptions apply. *Franchise Developers, Inc. v. Cincinnati* (1987), 30 Ohio St.3d 28, 30, 30 OBR 33, 34–35, 505 N.E.2d 966, 968–969.

Clearly, the issue before us concerns a matter of public interest for the citizens of Aurora, concerning the legality of No. Ordinance 1997–58 and the ability of a future mayor to enter into such employment agreements with a finance director for a period beyond the duration of a mayor's term. Such an issue would recur each time a future mayor extends a finance director's employment contract beyond his term in office. In recognizing the public's interest to enforce compliance of a city charter, the Supreme Court has held that "[i]f the members of a legislative body can ignore, with impunity, the mandates of a constitution or a city charter, then it is certain that the faith of the people in constitutional government will be undermined and eventually eroded completely." *State ex rel. Cater v. N. Olmsted* (1994), 69 Ohio St.3d 315, 323, 631 N.E.2d 1048, 1055, citing *Cleveland ex rel. Neelon v. Locher* (1971), 25 Ohio St.2d 49, 52, 54 O.O.2d 189, 190–191, 266 N.E.2d 831, 833–834. Depending on the duration of such an employment contract and a future court's docketing schedule, it is feasible that this issue may evade review by a future court. This case falls squarely within the exceptions to the mootness doctrine. Thus, the trial court was properly vested with subject-matter jurisdiction to address this matter to determine whether summary judgment was proper. Likewise, we may address the issue on appeal.

On appeal, a court of review must conduct a *de novo* review of the grant or denial of summary judgment. *Tackas–Davis v. Concorde Castings, Inc.* (Dec. 15, 2000), Lake App. No. 99–L–035, unreported, at 13; *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. A *de novo* review requires an appellate court to review a trial court's decision independently and without deference to it. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158.

Civ.R. 56 provides:

"(C) * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits * * * show that *there is no genuine issue as to any material fact* and that the moving party is entitled to judgment as a matter of law.* * * [S]ummary judgment shall not be rendered unless it appears from the evidence or stipulation * * * that *reasonable minds can come to but one conclusion* and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *

"* * *

"(E) * * * When a motion for summary judgment is made and supported * * * *an adverse party* may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue* for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." (Emphasis added.)

The Supreme Court of Ohio has held that summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewing the evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *State ex rel. Morley v. Lordi* (1995), 72 Ohio St.3d 510, 512, 651 N.E.2d 937, 939–940, citing *Welco Industries Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132.

Once a party meets its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the nonmoving party has a reciprocal burden of responding by setting forth specific facts, explaining that a "genuine issue" exists to be litigated. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 449, 663 N.E.2d 639, 641–642; *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 51–52, 567 N.E.2d 1027, 1030–1032. A "genuine issue" exists when a reasonable jury could return a verdict for the nonmoving party based upon the evidence. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212. The principal purpose behind Civ.R. 56(E) is to allow a court to analyze the evidence in order to determine whether there exists an actual need for a trial. *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau* (2000), 88 Ohio St.3d 292, 300, 725 N.E.2d 646, 652–653.

Summary judgment is appropriate when a plaintiff fails to produce any evidence supporting an essential element of his claim for which he bears the burden of production at trial. *State ex rel. Morley, supra*, at 513, 651 N.E.2d at 940, citing *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

We have held that a court must determine whether sufficient competent evidence has been presented by the party opposed to the motion on any issue of his claim. *Shafer v. Ford Motor Co., Inc.* (Feb. 28, 1997), Trumbull App. No. 96–T–5504, unreported, 1997 WL 374310 at 7–8, citing *Wing, supra*, at paragraph three of the syllabus. Some degree of examination of the sufficiency of the evidence is necessary to enable a court to determine whether a nonmoving party has met his threshold standard. *Id.* at 7–8.

We must now make an independent analysis to determine whether the trial court correctly granted appellee's motion for summary judgment, thus denying appellants' motion for summary judgment.

A municipal charter is the constitution of a municipality. *Cleveland ex rel. Neelon*, 25 Ohio St.2d at 51, 54 O.O.2d at 190, 266 N.E.2d at 833. Through constitutional provisions and statutory enactments, the people of a municipality have "the greatest possible quantum of power of self-government." *Id.*

For instance, the Aurora Charter provides:

"Section 3.01. All legislative powers of the Municipality under this Charter, together with such powers conferred upon municipalities by the Constitution and laws of Ohio, shall be vested in a Council of nine (9) members. * * *

"* * *

"Section 6.01. The Director of Finance * * * shall be appointed by, and report to, the Mayor *for a term concurrent with that for which the Mayor is elected* * * *. The *Director may be removed* from office by the Mayor with the concurrence of at least two-thirds (2/3rds) of * * * Council. Council may, on its own, remove the Director upon the affirmative vote of greater than two-thirds (2/3rds) of its members." [3] (Emphasis added.)

Where the language of a city charter is plain, clear, and unambiguous, such language must be given its usual and ordinary meaning. *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465–466. In matters of construction, courts have an obligation to

---

**3.** The charter was amended in November 1997. Nevertheless, Section 6.01 continues to require that "The Director of Finance * * * shall be appointed by, and report to, the Mayor for a term concurrent with that for which the Mayor is elected."

give effect to the words used, not to delete words used or to insert words not used. *State ex rel. Cater*, 69 Ohio St.3d at 324, 631 N.E.2d at 1055–1056; *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. In other words, where the intent of a city charter provision is clear, it may not be enlarged, restricted, or abridged.

The Supreme Court has held that ordinances cannot conflict with the provisions of a city charter. *State ex rel. Bloomingdale v. Fairborn* (1983), 2 Ohio St.3d 142, 144, 2 OBR 689, 690–691, 443 N.E.2d 181, 182–183; *Reed v. Youngstown* (1962), 173 Ohio St. 265, 19 O.O.2d 119, 181 N.E.2d 700, paragraph two of the syllabus. Similarly, the sound logic delineated in this rule may be extended to city employment contracts that conflict with provisions of a city charter.

■ In the case before us, Charter Sections 3.01 and 6.01 are clear on their face. Section 3.01 addresses the power of city council to enact legislation such as Ordinance No. 1997–58. Ordinance 1997–58 authorized the mayor and the chair of the finance committee to enter into an employment contract with Robert Paul, finance director, to define the conditions and terms of his continued employment with the city of Aurora. This employment contract was incorporated into the ordinance as an exhibit. Upon close examination, to the extent the ordinance allows the employment contract period to go beyond the mayor's term, the ordinance conflicts with the city's charter.

The employment agreement between Robert Paul and the city of Aurora provided:

"1. Aurora will continue the employment of Mr. Paul as Aurora's Finance Director for the period of time *March 24, 1997 to March 24, 2000.*

"* * *

"7. In the event that this Agreement is terminated by Mr. Paul * * * [or] by Aurora as a result of Mr. Paul's engaging in gross or other criminal misconduct, Mr. Paul shall receive all compensation accrued * * * as of the date [he] is terminated. In the event that this *Agreement is terminated by Aurora for any other reason*, Mr. Paul shall receive all compensation due [to] him under * * * this Agreement, whether it has accrued yet or not.* * * *Mr. Paul shall be entitled to receive * * * the entire three (3) year's worth of compensation * * *."* (Emphasis added.)

The language of Section 6.01 is clear, plain, and unambiguous. The plain and ordinary meaning of Section 6.01 unmistakably requires the finance director to be appointed *"for a term concurrent with that for which the Mayor is elected"* (emphasis added). However, the duration of Robert Paul's contractual employment period went well beyond Mayor Keidel's term in office. We agree with the trial court's finding that paragraph one of the employment contract directly

conflicts with the Aurora Charter. Additionally, we agree with the trial court's conclusion concerning the provision that allowed for continued compensation in the event that the city discharged Robert Paul for reasons other than gross or criminal conduct. Section 6.01 of the Aurora Charter grants a mayor the power to appoint a finance director and provides the methods for removing a finance director. Paragraph seven of the employment contract hinders this power. A future mayor would be reluctant to remove an existing finance director for reasons other than gross or criminal conduct because of the substantial cost to the taxpayers for such removal.

As it stands today, the employment contract between the city of Aurora and Robert Paul clearly conflicts with the Aurora Charter. Legislative deference to municipal charter provisions is fundamental to the charter form of government and is necessary to assure "the faith of the people in constitutional government." *State ex rel. Cater*, 69 Ohio St.3d at 323, 631 N.E.2d at 1055, citing *Cleveland ex rel. Neelon*, 25 Ohio St.2d at 52, 54 O.O.2d at 190–191, 266 N.E.2d at 833–834. The legislative power conferred to a municipal council by the people in a charter is subject to the limitations proscribed in that charter by the people.

In light of the above analysis, we conclude that there does not remain a genuine issue of fact for trial. Upon thoroughly considering the motions for summary judgment by both sides and construing the record before us in a light most favorable to the nonmoving party for each motion, reasonable minds can come to but one conclusion, which is adverse to appellants. The people of Aurora have spoken through their charter, and we cannot disturb their clear intentions. Paragraphs one and seven of the employment contract indisputably conflict with Section 6.01 of the Aurora Charter. The extension of Robert Paul's employment beyond Mayor Keidel's term in office was invalid.

Accordingly, appellee is entitled to summary judgment as a matter of law. The trial court correctly granted appellee's motion for summary judgment and denied appellants' motion for summary judgment. For the foregoing reasons, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

FORD, P.J., and NADER, J., concur.