CITY OF MORAINE, Appellee,

v.

LEWIS, Appellant.

[Cite as *Moraine v. Lewis,* 151 Ohio App.3d 526, 2003-Ohio-460.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19402.

Decided Jan. 31, 2003.

Neil F. Freund;  Heather M. Northup, for appellee.

Ron J. Kozar, for appellant.

GRADY, Judge.

{¶ 1}  Terry Lewis, an attorney, seeks compensation for the remainder of a three-year employment agreement he entered into with the city of Moraine. Lewis appeals from the trial court's judgment granting Moraine's motion for

summary judgment and denying his motion for summary judgment. For the reasons below, we affirm the trial court's judgment.

{¶ 2} In 2001 and 2002, Moraine city officials asked Lewis whether he was interested in serving as Moraine's law director. Lewis informed them that he was interested but also was concerned about Moraine's history of hiring and then promptly firing its law directors. Moraine therefore offered Lewis a three-year contract. Lewis accepted the offer, and an employment agreement was drawn up. The contract consisted of a form agreement generally used by the city that was drafted by a previous law director. To the form agreement, Lewis added the following language, which addressed the agreed-upon three-year term:

{¶ 3} "Employment shall continue for a period of three (3) years beginning on the effective date of this Agreement as hereinafter set forth and from year to year thereafter, provided, however, that said contract is subject to termination by either party giving ninety (90) days written notice to the other; except the City shall be obligated to compensate Employee for the term of this Contract unless there is just cause for his termination. Just cause shall be misfeasance, malfeasance or nonfeasance in office, or the Employee's failure to attend to the regular duties of his office."

{¶ 4} On August 22, 2001, the Moraine City Council passed a resolution authorizing the mayor to enter into the employment agreement with Lewis. The agreement was then signed by both the Mayor and Lewis.

{¶ 5} Shortly thereafter, the membership of the city council changed. At the next city council meeting, on September 27, 2001, a resolution was passed to terminate Lewis in accordance with the 90-day notice provision in the employment contract. By this time, Lewis had served as the law director for only a little over a month.

{¶ 6} Subsequently, Moraine filed an action for declaratory judgment asking the court to determine its liability for Lewis's compensation during the remainder of the three-year term of the contract. Lewis responded with a counterclaim seeking damages for breach of contract. Both sides moved for summary judgment. The trial court found for Moraine and against Lewis. Lewis appeals, offering two assignments of error.

FIRST ASSIGNMENT OF ERROR

{¶ 7} "The trial court erred in denying the defendant's motion for summary judgment."

## SECOND ASSIGNMENT OF ERROR

{¶ 8} "The trial court erred in granting the plaintiff's cross-motion for summary judgment."

{¶ 9} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 10} All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. "Because a trial court's determination of summary judgment concerns a question of law, we apply the same standard as the trial court in our review of its disposition of the motion; in other words, our review is de novo." *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 552, 671 N.E.2d 317.

{¶ 11} Lewis argues that his three-year employment contract with Moraine is enforceable because he was terminated without cause. Lewis does not argue that the city could not fire him; he argues that because the city did not have "just cause" to fire him, he is, therefore, entitled to the remainder of the three-year salary specified in the employment agreement, less mitigation.

{¶ 12} The employment agreement defines "just cause" as "misfeasance, malfeasance or nonfeasance in office, or the Employee's failure to attend to the regular duties of his office." Because he was not fired for one of these reasons, Lewis argues that he is entitled to the remaining 33 months of salary less mitigation.

{¶ 13} "When an attorney is discharged by a client with or without just cause, and whether the contract between the attorney and client is express or implied, the attorney is entitled to recover the reasonable value of services rendered the client prior to discharge on the basis of quantum meruit." *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448, at syllabus. "Ordinarily, when there is a written contract, a party cannot pursue the breaching party on the basis of quantum meruit." *Burke & Assoc., Inc. v. Koinonia Homes, Inc.* (1999), 135 Ohio App.3d 683, 686, 735 N.E.2d 479.

{¶ 14} The trial court granted Moraine's motion for summary judgment and denied Lewis's on a finding that the just-cause provision "takes the form of a penalty provision since it, in effect, states that [Lewis] would not be able to procure any other type of compensation during the balance of the contract."

Therefore, the trial court reasoned, the just-cause provision was not enforceable against Moraine.

{¶ 15} Lewis argues that the employment contract does not contain a penalty provision. He claims that the inserted clause merely affirms (1) Moraine's right to fire him without having to pay compensation for the unperformed remainder of the contract if he is terminated for just cause and (2) Moraine's liability to compensate him if it fires him without cause. He argues that the trial court erred because the trial court's reading of the provision is unreasonable, considering his express acknowledgment that the doctrine of mitigation of damages applied. Lewis argues that he is merely seeking the benefit of his bargain, which is the usual remedy in contract cases.

{¶ 16} Lewis argues that numerous Ohio cases hold that the general rule that limits fired attorneys to recovering only the reasonable value of work actually performed is a rule confined to situations in which the parties do not have express contracts to the contrary. Here, there was a written agreement.

{¶ 17} To begin, we find that Moraine's firing of Lewis was not a breach of their employment contract. "Where the employment is for a definite period, the attorney may be discharged at any time for justifiable cause. * * * The right to terminate the employment prior to the expiration of the specified period may, of course, depend upon or be affected by express provisions of the contract (1955), in this regard." Annotation: Attorney–Compensation Contract (1955), 43 A.L.R.2d 677, 679–680, at Section 3.

{¶ 18} There is nothing in the employment agreement stating that Lewis can be fired only for cause. Moraine's firing of Lewis is consistent with the general rule that a client has the right to discharge an attorney at any time. *Bolton v. Marshall* (1950), 153 Ohio St. 250, 41 O.O. 270, 91 N.E.2d 508. The employment agreement provides merely that Lewis would receive compensation for the remainder of the contract if he is fired without good cause. Because there was no breach of that part of the contract, we find that the further compensation terms of the contract are merely penalties imposed on Moraine for its choice to exercise its right to fire Lewis without just cause.

{¶ 19} Moraine replies that, even if there was a breach, it is not answerable in money damages. It argues that as a charter city it has the power to terminate its agreements and that to hold otherwise would subject its taxpayers to an unreasonable burden. Moraine relies on *Deluca v. Aurora* (2001), 144 Ohio App.3d 501, 760 N.E.2d 880.

{¶ 20} In *Deluca*, the mayor of a charter city signed a contract to employ a city finance director for a stated term. The term exceeded the mayor's term of office. The city charter provided that the finance director would be appointed to

a term "concurrent [to] that for which the mayor is elected." The court drew an analogy between the employment contract and an ordinance, noting that an ordinance cannot conflict with the provisions of a city charter. For that reason, the contract was held unenforceable.

{¶ 21} The facts before us differ from those in *Aurora*. No provision of the Moraine City Charter limits the law director's term. The charter provides that the law director shall serve at the pleasure of the Moraine City Council. So long as the council had the power to terminate Lewis as law director, the provision is not violated. The council exercised that power when it terminated Lewis. There was no breach, and no damages are due. Rather, the issue is whether Moraine should be exempt from the early termination penalty to which the parties agreed. Moraine argues that it is exempt by reason of its status as a charter city.

{¶ 22} The Home Rule Amendment of the Ohio Constitution, Section 7, Article XVIII, authorizes municipalities that adopt a charter to "exercise thereunder all powers of local self-government." That provision is expressly made subject to Section 3 of the amendment, which additionally permits such municipalities "to adopt and enforce within their limits such local police, sanitary, and other similar regulations, as are not in conflict with general laws."

{¶ 23} The Home Rule Amendment does not confer the sovereign attributes and powers of the state on municipalities. It merely permits them to exercise their local powers free of state control, excepting from those local powers matters which are properly subject to the "general law of the state." Nothing in that arrangement authorizes home-rule municipalities to repudiate their obligations of contract. Nor do they allow those municipalities to exempt themselves from penalties to which they have agreed to pay if they exercise their contract rights.

{¶ 24} Moraine further argues that Lewis is simply trying to collect 33 months of unearned legal fees. This, it claims, is strictly prohibited by the Code of Professional Responsibility. Specifically, it points to DR 2–110(A)(3), which states: "A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned."

{¶ 25} In *Columbus Bar Assn. v. Klos* (1998), 81 Ohio St.3d 486, 692 N.E.2d 565, the Ohio Supreme Court noted that there are some situations wherein a nonrefundable retainer might be justified. As an example, it offered the situation when an attorney is engaged to remain available and must forgo other potential employment, particularly for a competitor of his or her client. The court, however, noted that generally, "a client should have the freedom to discharge an attorney at any time subject to the obligation to compensate the attorney only for the services rendered and related expenses. The attorney should not receive a

windfall if he or she withdraws or is discharged by the client." Id. at 489, 692 N.E.2d 565.

{¶ 26} While the case before us does not involve prepaid fees or a retainer, the substantial amount of compensation sought by Lewis is for unearned services. The only difference is that the monies are to be paid after the attorney's employment concludes, not before it begins. That difference is immaterial to the issue presented. We find that the same rationale should apply to Lewis's claims in this circumstance.

{¶ 27} Attorneys occupy a special and favored position of trust and confidence vis-à-vis their clients. In addition, the practice of law permits attorneys to commit their clients to obligations before the law in the conduct of legal proceedings. Inherent in the authority conferred on the Supreme Court by Section 5(B), Article IV of the Ohio Constitution is the power to control the admission of attorneys to the practice of law. *Melling v. Stralka* (1984), 12 Ohio St.3d 105, 12 OBR 149, 465 N.E.2d 857. For these reasons, the General Assembly has elected to regulate the practice of law by limiting it to persons who have been admitted to the practice "by order of the supreme court in compliance with its prescribed and published rules." R.C. 4705.01.

{¶ 28} The Code of Professional Responsibility was adopted by the Supreme Court pursuant to the authority conferred on it. The Preface to the Code states:

{¶ 29} "The Canons of this Code are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with the legal profession. They embody the general concepts from which the Ethical Considerations and the Disciplinary Rules are derived.

{¶ 30} "The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations.

{¶ 31} "The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action."

{¶ 32} The sense of DR 2–110(A)(3) and the holding in *Klos* compels us to conclude that Lewis's contract right to fees for services which he cannot perform after Moraine exercised its right to terminate his contract is a right which is unenforceable in law, as a matter of public policy. This is not to say that Lewis acted improperly when he insisted on the penalty provision in his employment contract. The provision could reasonably serve as an inducement to the city of Moraine to reform its practice of hiring and firing its law directors arbitrarily, which does not serve the public's interest, and in that respect the provision could

have a salutary effect. Even so, it operates as a form of windfall to Lewis for legal services he did not and cannot perform, and for that reason the provision is one that the courts should not enforce.

{¶ 33} By this decision, we do not find that an attorney in Lewis's situation can never collect damages beyond the work performed for his or her client. We, like the Ohio Supreme Court in *Klos*, can foresee circumstances that may arise in which attorneys may be able to recover costs above the legal services he or she has already rendered. For example, were an attorney to make a financially significant outlay the predominant use of which is to assist the attorney in representing a client who later terminates the attorney/client relationship prior to the end of their contractual agreement, the attorney might be able to collect some or all of the outlay expense. Likewise, if an attorney forgoes other potential employment, particularly for a competitor of his or her client, based on his obligation to a client who later ends the attorney/client relationship prior to the end of their contractual employment agreement, he or she may be entitled to receive compensation if the agreement with the client allows it. Neither applies here, however.

{¶ 34} There is no evidence that Lewis made any reasonable financial outlay predominantly in order to perform the promises in his contract with the city of Moraine, or that he severely limited his professional obligations in any way because of his contractual obligation to Moraine. Lewis continued his private law practice. He testified that he hired a legal secretary to enable him to perform his duties with Moraine after he signed the employment contract. However, as of his February 22, 2002 deposition, that secretary was still working for Lewis even though he had been terminated by Moraine almost five months earlier.

{¶ 35} Lewis also testified that during the first month after he signed the employment contract he began to limit his practice by referring smaller cases to other attorneys. However, he admitted that after the first 30 days he stopped referring cases because of the uncertainty of his status as Moraine's law director. We find no evidence that Lewis altered his business obligations in such a way that substantially harmed his professional practice.

{¶ 36} Lewis received his salary for the month he actually worked for the city and for the following three months, pursuant to the 90-day notice clause in the contract. Nothing in the record persuades us that Lewis is entitled to any more than he has already received.

{¶ 37} For the foregoing reasons, both assignments of error are overruled, and we will affirm the judgment from which this appeal was taken.

Judgment affirmed.

BROGAN and WOLFF, JJ., concur.