[Cite as *State ex rel. Cahil v. Madison*, 2018-Ohio-1449.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO ex rel. KENNETH J. CAHILL, IN HIS INDIVIDUAL CAPACITY AND ON BEHALF OF THE VILLAGE OF MADISON, et al., | : | **O P I N I O N** |
|  | : |  |
| | : | **CASE NOS. 2017-L-100** |
| Petitioners-Appellants, | : | **2017-L-101** |
| | : | |
| - vs - | : | |
| | : | |
| VILLAGE OF MADISON, et al., | : | |
| | : | |
| Respondents-Appellees. | : | |

Civil Appeals from the Lake County Court of Common Pleas, Case No. 2014 CV 002412.

Judgment: Affirmed.


*Kenneth J. Cahill*, pro se, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (Plaintiff-Appellant).

*Geoffrey W. Weaver*, 8043 Chardon Road, Kirtland, OH 44094 (For Plaintiff-Appellant, John R. Hamercheck).

*Joseph P. Szeman*, Madison Village Law Director, 10 West Erie Street, Suite 106, Painesville, OH 44077 (For Defendants-Appellees, Dan Donaldson, Duane Frager, Greg Mabe, Ken Takacs, Mark Vest, Sam Britton, and Village of Madison).

*Gary L. Pasqualone*, Curry and Pasqualone, 302 South Broadway, Geneva, OH 44041 (For Defendant-Appellee, Madison Joint Fire District).


DIANE V. GRENDELL, J.

{¶1}    Petitioners-appellants, Kenneth J. Cahill and John R. Hamercheck, appeal

the judgment of the Lake County Court of Common Pleas, dismissing their Amended

Petition for Writ of Mandamus and Application for Injunctive Relief. The issues before this court are whether a village council's decision to compensate a fire district for its leasehold interest in property owned by the village, when the village is not contractually obligated to do so, constitutes an abuse of corporate power and/or misapplication of public funds; whether a conflict of interest prevented village council members who were also members of the fire district board of trustees as representatives of the village from participating in the decision to offer compensation to the fire district; and whether a party is entitled to the production of documents which are not relevant to the claims actually raised in the complaint. For the following reasons, we affirm the decision of the court below.

{¶2} On December 23, 2014, the petitioners filed a Petition for Writ of Mandamus and Application for Injunctive Relief in the Lake County Court of Common Pleas against respondent-appellees, the Village of Madison, Sam Britton (in his official capacity as Mayor of Madison Village), Don Donaldson, Duane Frager, Greg Mabe, Ken Takacs, and Mark Vest (in their official capacities as councilmen of Madison Village).

{¶3} On January 16, 2015, the respondents filed their Answer.

{¶4} On February 9, 2015, the petitioners filed, pursuant to court order, an Amended Petition adding the Madison Joint Fire District as a necessary party.

{¶5} On February 13, 2015, the respondents filed their Answer to the Amended Petition.

{¶6} On March 1, 2015, the Madison Joint Fire District filed a Separate Answer.

{¶7} On September 20, 2016, the petitioners filed a Motion to Compel the production of certain documents.

{¶8} On July 18, 2017, the trial court ruled on the merits of the Petition, "the parties hav[ing] agreed and stipulated that all materials have been submitted and that this matter may be decided based on the filings," and denied the petitioners relief. The court determined that the request for production had been answered and was not determinative of the matter before it. The court found as follows:

> Petitioners are taxpayers in the Village of Madison. They are also two members of the Madison Village Council. This action is brought against various public officials of the Village and several public entities including the Village of Madison and the Madison Fire District. Three of the public officials named are also members of the Village Council. Petitioners bring the action seeking to "[P]revent misapplication of Village funds and abuse of corporate powers in connection with a proposed transaction between the Village of Madison and the Madison Fire District".

> The Madison Fire District was formed by the Village and Madison Township in 1971. The Fire District has a Board of six Trustees, three of whom are members of the Madison Village Council. The other three trustees of the Fire District are from Madison Township. Madison Village Council members Frager, Takacs, and Vest sit on the Fire District Board of Trustees. They sit solely because they are Village Council members. The Village Council is required to name three of its members to the Fire District Board of Trustees. The three members sit as part of their official functions as members of the Village Council.

> In 1982 the Village and the Fire District entered into a lease involving a parcel of real estate known as Fire Station No. 1. The property is owned by the Village and leased to the Fire District. The lease provides that upon termination of the lease, any and all improvements shall become the property of the Village. A memorandum of understanding with similar terms was entered into in 2009. This document provided that if Station No. 1 was not being used as a fire station, then the building and real estate would revert to the control of the Village. Numerous improvements were made to the real estate by the Fire District during the lease period. In 2013 the Fire District moved its headquarters from Station No. 1 and by the end of 2013 the premises was not being operated as a fire station.

> In August 2014 Madison Village Council considered legislation to evict the Fire District. The legislation failed. The

3

legislation failed as it had only two affirmative votes. The no votes included the three Council members who were also members of the Fire District Board. Shortly thereafter the Village Council approved legislation to pay $189,000.00 as a buyout of the Fire Districts interest along with any claims the Fire District might have to the improvements made during the lease of the property. There also was a small claim for some repair work on the premises. During this vote the three Council members, who also were Trustees of the Fire District, voted in favor of the buyout. The three voting in favor were Frager, Takacs, and Vest. Without the three votes the legislation approving the buyout and payment would have failed. Petitioners who are also members of the Village Council voted no on the buyout.

Petitioners thereafter requested the Village Law Director [to] commence an action for the misapplication of taxpayer funds with respect to the buyout payment to the Fire District. This request was denied.

Petitioners then commenced this action. Petitioners claim the payment of the $189,000.00 violates the lease and the Memorandum of Understanding between the Village of Madison and the Madison Fire District. Petitioners claim the payment is a misapplication of funds and an abuse of power in violation of Ohio Revised Code section 733.56. Petitioners claim the three Council members who also sat on the Fire District had a conflict of interest and thus could not participate in the vote to fund the buyout. Petitioners also claim the buyout itself is an illegal use of taxpayer funds.

The first issue before the Court deals with whether a conflict of interest existed involving the three members of the Village Council who also sat on the Fire District Board of Trustees. It should be noted that the Council members only sat on the Fire District because they were members of Council. Ohio law permits such dual positions as to joint fire districts. This is not contested by petitioners. Petitioners claim the conflict was in the three members of Village Council voting to use Madison Village funds to pay the Madison Fire District. The question of a conflict of interest was submitted to the Ohio Ethics Commission. The Ohio Ethics Commission issued an opinion dated February 16, 2016. In essence it finds no impermissible conflict of interest. This Court can find no conflict in the facts presented. Ohio law permits a Village council member to serve on a board of another entity in their official capacity as part of their official duties. Thus, the Village Council members serve on the Fire District solely because they are Village Council members. The Fire District was created pursuant to

4

Ohio Revised Code Section 505.371. The Trustees of the Fire District are by its very terms made up from the Village Council and the Township Trustees. This arrangement has existed for almost fifty years since the inception of the Fire District. There is no prohibition from these members voting on issues that may also benefit the Fire District as in the instant issue. There is no violation of the Ohio Revised Code section 102.03. As a matter of law there is no prohibition for the Council Members to participate in the determination of the buyout with the Fire District.

Next this Court is charged with the determination as to whether the buyout passed by the Village Council was a misapplication of public funds? The question is straight forward. The question before the court is confined to * * * whether the buyout is a misapplication of public funds as a matter of law. The Court answers this issue in the negative. This court cannot make such a determination that the payment is beyond the power of the Village Council to legally make such a determination. This is a legislative function and by law it is a matter left to the Village Council to decide. The Court may not substitute its determination for that of the Village Council. Further it is not for this Court to decide whether any such buyout was a wise expenditure of taxpayer funds. As to whether the buyout was a wise use of funds; that is left for the voters of the Village of Madison to determine at the ballot box.

{¶9} On August 15, 2017, the petitioners filed Notices of Appeal.[1] On appeal they raise the following assignments of error:

{¶10} "[1.] Whether the trial court abused its discretion when it found the court had no authority to determine if the payment by Madison Village was appropriate."

{¶11} "[2.] Whether the trial court abused its discretion by finding that there was no conflict of interest when three Madison Village councilmen who also served as Board Members of the Madison Fire District voted to pay $189,000.00 to the Fire District."

---

1. Hamercheck's appeal was given Court of Appeals No. 2017-L-100 and Cahill's Court of Appeals No. 2017-L-101. The appeals were consolidated on the petitioners' joint motion.

5

{¶12} "[3.] Whether the trial court abused its discretion when it found that the request for production of documents had been answered and further that it is not a determinative matter before the court."

{¶13} The Ohio Revised Code provides that a taxpayer, under certain conditions not in dispute herein, "may institute suit in his own name, on behalf of the municipal corporation." R.C. 733.59. The relief available in such suits includes: "an order of injunction to restrain the misapplication of funds of the municipal corporation, the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinance governing it, or which was procured by fraud or corruption," and, "[i]n case an officer or board of a municipal corporation fails to perform any duty expressly enjoined by law or ordinance, * * * a writ of mandamus to compel the performance of the duty." R.C. 733.56 and 733.58 respectively.

{¶14} Here, the petitioners sought "[a]n injunction * * * prohibiting [respondents] from paying the Madison Fire District the $189,000 provided for in the Resolution [No. 15 - 2014]" and "[a] writ of mandamus requiring the Village of Madison to take control of the Fire Station No. 1 in accordance with the terms of the Lease and/or Memorandum of Understanding."[2]

{¶15} Decisions regarding the issuance of a writ of mandamus or the granting of an injunction are generally reviewed under the abuse of discretion standard. *Patton v. Springfield Bd. of Edn.*, 40 Ohio St.3d 14, 15, 531 N.E.2d 310 (1988) ("[t]he writ of

---

2. In a Supplemental Brief, filed on May 10, 2017 (prior to the entry of final judgment), the respondents argued that the case should be dismissed as moot since the initial payment under the Agreement sought to be enjoined had already been made. Also, according to the Agreement, the Fire District was to have surrendered the premises to the Village of Madison as of September 17, 2014. The trial court did not expressly rule on the issue of mootness and the argument has not been raised on appeal.

6

mandamus * * * is a high prerogative writ, and its issuance rests in the sound discretion of the court"); *Perkins v. Quaker City*, 165 Ohio St. 120, 125, 133 N.E.2d 595 (1956) ("unless there is a plain abuse of discretion on the part of trial courts, in granting or refusing injunctions, reviewing courts will not disturb such judgments").

{¶16} Under the first assignment of error, the petitioners argue that "[t]he payment of $189,000 to the Fire District in order to buyout the Leasehold interest and compensate the Fire District for * * * improvements is in direct contravention of the terms of the Lease and the Memorandum of Understanding." Appellants' brief at 7. As "there was no legal basis for the payment of this money," it was error for the trial court to defer to the Village Council regarding the expenditure.

{¶17} We agree with the trial court that the decision to compensate the Fire District for its leasehold interest in the premises was discretionary with the Village Council and did not constitute an abuse of corporate powers. The abuse of corporate powers has been described as "the unlawful exercise of powers possessed by the corporation, as well as the assumption of power not conferred." (Emphasis omitted.) (Citation omitted.) *Porter v. Oberlin*, 1 Ohio St.2d 143, 146, 205 N.E.2d 363 (1965). "Taxpayer actions, involving an abuse of corporate powers, are carefully restricted by court decisions." *Columbus ex rel. Willits v. Cremean*, 27 Ohio App.2d 137, 149, 273 N.E.2d 324 (10th Dist.1971). One such restriction establishes "that public officials who act in good faith, and cannot be accused of fraud or collusion, have a range of discretion which courts respect and such court will not substitute their judgment for that of the public official." *Id.*; *Cincinnati ex rel. Ritter v. Cincinnati Reds, L.L.C.*, 150 Ohio App.3d 728, 2002-Ohio-7078, 782 N.E.2d 1225, ¶ 40 (1st Dist.) ("a taxpayer's suit

7

cannot be 'used to control or interfere with the discretion of a municipal board,' absent fraud or a gross abuse of discretion") (citation omitted).

{¶18} The enactment of Resolution No. 15 - 2014 authorizing the Madison Village mayor to enter an agreement with the Fire District to buyout its leasehold interest was not an unlawful exercise of municipal power nor was it an assumption of power not conferred. Rather, the petitioners claim that the Resolution constitutes a gross abuse of legislative discretion in that it was wholly unnecessary to pay the Fire District anything to regain the premises. A review of the record demonstrates, however, that the decision to compensate the Fire District did not arise from improper motive or gross incompetence. The Council Minutes recording the discussion of Resolution No. 15 - 2014 frankly admit that there was no legal obligation to pay the money, but that it should be paid for the sake of maintaining the Village's relationship with the Fire District in light of certain misrepresentations/misunderstandings between the two entities:

> Mr. Cahill asked Mr. Vest to explain the legal interests that the fire district has [in the premises]. * * * Mr. Vest stated that it is his understanding that they are the improvements made to the building. Mr. Frager added that it was for improvements valued at $250,000.00 * * * Mr. Cahill stated that the lease dated 1982 specifically states that any building improvements become property of the Village at the termination of the lease. He stated that this was again stated in the Memorandum of Understanding (M.O.U.) dated October, 2009. He asked for documentation that shows that the Village is obligated to pay the fire district. Mayor Britton stated that there is none and that is why he brought it before Council. * * * Mr. Cahill stated that we have the right to serve the fire district with notice to vacate and not pay them anything. He asked Mr. Vest for explanation. Mr. Vest replied that the Village has a good working relationship with the township working together as a fire district and he does not feel that a lot of good will would become of us [sic] not compensating them for the improvements. * * * Mr. Cahill stated that this money should be spent on other needs of the Village. He stated that the fire district was never charged any rent and he feels that this is far too much money to be spent for good will. * * * Mr. Cahill stated that he has not seen any documentation that was

8

dually [sic] signed that states that the Village is required to compensate the fire district for the improvements made to fire station number one. Mr. Takacs stated that there is no legal obligation of the Village to pay anything for lease-hold interests for the improvements of that fire station. Mr. Takacs provided details of the decision to improve stations one and two. He added that the fire district made assurances to the community that they would not spend the dollars to improve station one and then 'hand it over' to the Village to be used for a road garage. He stated that there is a credibility issue at hand. He stated that he made a commitment to not 'give away' the cost of the improvements to the Village. He added that the responsible and moral obligation is that we assured people that we were not going to do this. Mr. Takacs stated that the fire district did not initiate this conversation. This conversation began with Mayor Britton and Mr. Takacs trying to address a situation with the police department garage. * * * [Mr. Cahill] stated that the Mayor and Mr. Takacs entered into conversations with the fire district without knowing all of the facts. He added that they made commitments to the fire district and then the lease surfaced. Mr. Cahill stated that mistakes are made, but the fact of the matter is that there is nothing in writing that states that there should be compensation to the fire district for the addition/improvements that they made.

{¶19} In legal terms, the Village Council was motivated by equitable considerations (somewhat akin to an estoppel claim) in its decision to authorize payment to the Fire District despite the lack of legal necessity. The strength of those considerations is certainly debatable, but the courts are not the proper forum in which to hold debate over such matters better suited to legislative and democratic processes. *Lloyd v. Toledo*, 31 Ohio C.D. 192, 197 (1912) ("courts have ever hesitated to arrogate to themselves the right to be the censor or guardian of public officers who act in good faith").

{¶20} The petitioners cite to *Deluca v. Aurora*, 144 Ohio App.3d 501, 760 N.E.2d 880 (11th Dist.2001), as an example of a successful taxpayer challenge to a municipal contract. *Deluca* is readily distinguishable in that the contract at issue therein was "to prevent performance of the alleged illegal employment contract." *Id.* at 507. The

9

petitioner in *Deluca* prevailed because the challenged contract was in conflict with the municipal charter. *Id.* at 512 ("[p]aragraphs one and seven of the employment contract indisputably conflict with Section 6.01 of the Aurora Charter," thus rendering the contract "invalid").

{¶21} In the present case, there is no such conflict or claim of illegality. The Village Charter may impose a duty upon the mayor to "[s]ee that all terms and conditions imposed in favor of the Municipality * * * in any * * * contract to which the Municipality is a party are faithfully kept and performed." Charter of the Village of Madison, Article III, Section 3.6(a)(4). But this provision does not prevent the mayor and Village Council from modifying or abrogating such agreements in the exercise of their discretion on behalf of the municipality. Moreover, we note that the 1982 lease expressly contemplated modification with respect to compensation for improvements: "All additions and improvements made by Lessee, * * * shall become the property of Lessor on the termination of this Lease, unless otherwise provided in writing."

{¶22} The first assignment of error is without merit.

{¶23} In the second assignment of error, the petitioners maintain that Resolution No. 15 - 2014 was invalid due to three members of the Village Council who passed the Resolution (Frager, Takacs, and Vest) having a conflict of interest as they were also members of the Madison Fire District Board of Trustees.

{¶24} The Madison Fire District was created pursuant to R.C. 505.371(B), which provides that "[t]he governing body of the joint fire district shall be a board of fire district trustees, which shall include one representative from each board of township trustees and one representative from the legislative authority of each municipal corporation in the district." In creating the Madison Fire District, Madison Village and Madison

10

Township determined that the board of trustees "shall be comprised of the three (3) Madison Township Trustees and * * * three (3) members of the Madison Village Council as the latter are appointed by said council from time to time." Council Working Groups Manual for the Village of Madison, Ohio.

{¶25} During the course of this litigation, the petitioners twice sought the opinion of the Ohio Ethics Commission as to whether Frager, Takacs, and Vest violated Ohio ethics law by participating in the negotiation and passage of the municipal resolution authorizing the payment of compensation to the Fire District by the Village.

{¶26} In a response given on November 12, 2015, the Commission noted (without the issuance of an advisory opinion) that "where a public official is serving with a second public agency in his 'official capacity,' the Ethics Law neither prohibits the official from serving both agencies nor prohibits the official from actively participating in all matters before each agency." *See* Advisory Opinion No. 84-001, 1984 WL 49990, *1 (where an official serves the second agency in his official capacity, "there would not be a dual interest in which private considerations would detract from his serving the public interest").

{¶27} In response to the petitioners' request for a "confidential investigation to determine whether the public officials in question have violated the ethics law," the Commission declined to do so by a response given on February 16, 2016: "the Ohio Ethics Commission has no authority to respond to the issues you raised because Village of Madison Council Members Duane Frager, Ken Takcas [sic], and Mark Vest are serving on the Madison Joint Fire District Board of Trustees in their official capacity as council members and no other conflict of interest exists."

11

**{¶28}** Despite the Ethics Commission's determination, the petitioners maintain that Frager, Takacs, and Vest do not satisfy the conditions for serving in an official capacity. According to the Commission, four criteria must be met for a public official to be deemed to serve on the board of a second public agency: "(1) the governmental entity must create or be a participant in the non-profit corporation; (2) any public official or employee connected with the jurisdiction, including a council member, may be designated to serve on the non-profit corporation, but the elected legislative authority or the appointed governing body must formally designate the office or position to represent the governmental entity; (3) the public official or employee must be formally instructed to represent the governmental entity and its interests; and (4) there must be no other conflict of interest on the part of the designated representative." *Id.* at *2; Advisory Opinion No. 99-004, 1999 WL 1335146, *4-5.

**{¶29}** The petitioners contend that Frager, Takacs, and Vest "were never formally instructed to represent the interests of the Village of Madison." Reply brief at 6. We disagree. Initially we note that the third criterion appears essentially duplicative of the second one. As a practical matter, Council members serving on the Fire District's Board of Trustees are advised by the Working Groups Manual adopted by motion of the Village Council that they are to work "for the good of government and residents of our Village" and "ensure that its operations are conducted in an ethical and legal manner so as to promote the Village's reputation as an efficient, progressive body in the community, county & state." Such language sufficiently instructs Council members that they are to represent the Village's interest by their membership on the Board of Trustees.

12

{¶30} We also knowledge the authority cited by the respondents holding that courts will defer to the Ethics Commission when municipal action is challenged on the grounds of conflict of interest. *Warren ex rel. Bluedorn v. Hicks*, 124 Ohio App.3d 621, 629, 707 N.E.2d 15 (11th Dist.1997) ("the trial court did not err by stating that the injunction proceeding was not the appropriate forum for [invalidating the city council's passage of compensation ordinances]," as "[t]he proper mechanism for challenging the propriety of the pre-term compensation increases is the filing of a complaint by the Ohio Ethics Commission"); *State ex rel. Powers v. Curtis*, 12th Dist. Clinton No. CA2002-10-039, 2003-Ohio-6104, ¶ 29 (declining to remove a council member from office even if his election was the result of criminal conduct); *Mather v. Springfield Twp.*, 6th Dist. Lucas No. L-94-196, 1995 WL 302307, *3 (May 19, 1995) (where it was contended that "the Commission's approval of the zoning change application was illegal * * * because [the chairman] had a conflict of interest, * * * the remedy is to notify the Ethics Commission, who conducts an investigation") (citation omitted).

{¶31} The second assignment of error is without merit.

{¶32} In the third and final assignment of error, the petitioners contend that the trial court erred by not compelling the production of a document alleged to be in the possession of respondents. The document in question was described as follows in the petitioners' original Request for Production: "Madison Fire District Invoice #14-001 and an itemized list of claimed damages relating to concrete." Petitioners assert the relevance of this document by reference to the following averment from the Amended Complaint:

> Mayor Britton initially proposed the transaction reflected in the Resolution during an unrelated Executive Session, whereby Mayor Britton proposed Madison Village would pay the Fire District a total

13

sum of One Hundred and Eighty-Nine Thousand Dollars ($189,000.00) with One Hundred and Eighty-Five Thousand Dollars ($185,000.00) for the "claimed leasehold interest" in Station One, and Four Thousand Dollars ($4,000.00) for the "claimed damages" to the Fire District for additional costs relating to concrete work at new Station No. 3 resulting from the Madison Village Southerly Waterline Improvement Project.

{¶33} Counsel for the Village respondents replied that "there's no such invoice in the Village's files or any list of damages related to concrete on Fire District property." Counsel for the Fire District did not respond. The trial court ruled that the production request was "not on a determinative matter before the Court."

{¶34} The petitioners maintain that the inability and/or unwillingness to produce the invoice "directly questions the credibility and competence" of the respondents and violates Ohio public records law (Open Meetings Act). Appellants' brief at 21 ("the application of the public record(s) in a formal action taken in executive session is invalid").

{¶35} We agree with the trial court that the production of the invoice was not relevant or necessary to determine the issues raised by the petitioners. Presuming that the invoice exists and that it was considered in determining the amount of money that was paid to the Fire District, our analysis of the prior assignments of error would not change. It has no bearing on whether the decision to compensate the Fire District was discretionary with the Village or whether Council members who authorized the payment had a conflict of interest. Where the requested discovery is not relevant to the subject matter and the failure to produce it has not prejudiced the party seeking discovery, it is within the trial court's discretion not to compel discovery. *Brunstetter v. Keating*, 11th Dist. Trumbull No. 2002-T-0057, 2003-Ohio-3270, ¶ 30.

14

{¶36} We further note that the petitioners have not previously raised claims regarding the alleged violation of Ohio public records law. Such claim has no bearing on the trial court's decision not to compel production.

{¶37} The third assignment of error is without merit.

{¶38} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas in favor of respondents is affirmed. Costs to be taxed against the appellants (petitioners).


CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.