[Cite as *Olenchick v. Scramling*, 2020-Ohio-4111.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| RODNEY P. OLENCHICK, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| - vs - | : | **CASE NO. 2020-L-018** |
| JOHN SCRAMLING, et al., | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2018 CV 000553.

Judgment: Affirmed.

*Marc L. Stolarsky,* Marc L. Stolarsky Law, LLC, P.O. Box 24221, Cleveland, OH 44124 (For Plaintiffs-Appellees).

*Thomas J. Connick*, Connick Law, LLC, 25550 Chagrin Boulevard, Suite 101, Cleveland, OH 44122 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} This case involves a dispute over the ownership of a garage unit at Bayridge Condominiums ("Bayridge") located in Willowick, Lake County, Ohio. Two appeals were taken from the trial court's final order in the matter. The instant appeal was brought by Defendant-Appellant John Scramling against Plaintiffs-Appellees Rodney P. Olenchick and Randy (*né* Ranold) D. Olenchick. The judgment is affirmed.

{¶2}   In 1978, Randy D. Olenchick ("Randy") purchased a condominium and garage at Bayridge.  The deed for this transaction indicates Randy purchased Condominium Unit No. 30 and Garage Unit No. 41.

{¶3}   In 1980, his brother Rodney P. Olenchick ("Rodney") purchased Garage Unit No. 60 from Mary Manning, a condominium owner at Bayridge.  In 1981, Randy received Garage Unit No. 59 in exchange for conveying Garage Unit No. 41 to Mary Manning.  In 1982, Mary Manning sold her condominium unit and Garage Unit No. 41 to a third party.  These transactions were all recorded.  Neither Mary Manning nor her grantee are parties to this dispute.

{¶4}   In 1989, Rodney transferred title of Garage Unit No. 60 to Randy by quit claim deed.  A copy of the recorded deed was introduced by defense counsel during depositions, but neither brother recalled the transaction.  It was also alleged by the Olenchicks, however, that Rodney subsequently purchased rights to Garage Unit Nos. 59 and 60 from Randy.  No documentation was produced evidencing this transaction.  Rodney testified that documentation might have existed at one point but could not be located; Randy testified it was an oral agreement.  The issue of which brother owned legal title for either or both units was a source of confusion throughout the litigation.[1]  It is undisputed, however, that regardless of which Olenchick held legal title, Garage Unit Nos. 59 and 60 were used exclusively by Rodney pursuant to an oral agreement between the two brothers.  Rodney does not own, and has never owned, a condominium unit at Bayridge.

---

1. This confusion was seemingly caused by a combination of poor drafting and the Olenchicks' lack of understanding of legal terminology.  Prior to the transaction between Randy and Scramling, one of the brothers held legal title to each of the two garage units, and Rodney undisputedly possessed the right to use both garage units.

{¶5} On February 16, 2016, Randy sold his Bayridge condominium to John Scramling ("Scramling"). The first page of the Purchase Agreement describes the property as a "1bdrm condominium, no garage space." However, the General Warranty Deed purportedly conveyed to Scramling both Condominium Unit No. 30 and Garage Unit No. 41. The deed was drafted by an attorney who is not a party to this action. The deed was admittedly signed by Randy and his spouse and was recorded on March 4, 2016.

{¶6} Subsequently, someone changed the deed by replacing "41" with "59" and adding a note that states, "deed rerecorded to show correct garage unit." The changes were handwritten on the original deed and were not initialed. The original time stamp of the Lake County Recorder was crossed out. A new stamp from the Deputy County Auditor on August 3, 2017, indicated a second transfer was not necessary. The deed was then rerecorded by the Lake County Recorder on or about August 3, 2017, and purportedly conveyed Condominium Unit No. 30 and Garage Unit No. 59 from Randy to Scramling.

{¶7} The specifics are not unveiled in the record, but this conflict subsequently ensued because Scramling asserted ownership of Garage Unit No. 59, and Rodney refused to vacate.

{¶8} On April 4, 2018, the Olenchick brothers filed a complaint against Scramling, the Lake County Recorder ("the Recorder"), Ohio Real Title Agency, LLC ("Real Title"), and Bayridge Condominium Owners Association, Inc. The trial court subsequently dismissed the Owners Association as a defendant upon granting its Civ.R. 12(B)(6) motion to dismiss.

3

{¶9} The Olenchicks requested the trial court issue an order to the Recorder and Real Title to correct the deed so that Garage Unit No. 59 is not in Scramling's name. The Olenchicks additionally requested reimbursement for attorney's fees, court costs, and "damages for this travesty taking his rights to garage number 59, ignoring his pleas to fix the error and refusal to correct it in a timely manner."

{¶10} The Recorder answered the complaint on May 29, 2018. Real Title answered the complaint on July 9, 2018, following the denial of its Civ.R. 12(B)(6) motion to dismiss.

{¶11} On June 8, 2018, Scramling filed an answer to the complaint and a nine-count counterclaim against the Olenchicks for quiet title, forcible entry and detainer, trespass, conversion, declaratory judgment and injunctive relief, specific performance, ejectment, rent, and unjust enrichment.

{¶12} The Olenchicks answered Scramling's counterclaim on June 20, 2018. Their Civ.R. 12(B)(6) motion to dismiss the counterclaim was denied.

{¶13} On December 3, 2018, prior to the taking of any depositions, the Recorder filed a motion for summary judgment. The Recorder asserted it was entitled to judgment as a matter of law because it did not change the deed, it had no duty to inspect or investigate the changed deed, and it properly recorded the changed deed. The motion was supported by an affidavit of Lake County Recorder Becky Lynch, averring that no one at the Recorder's office made any changes to the deed and that the changed deed was submitted for rerecording by Real Title.

{¶14} In rebuttal, filed December 19, 2018, the Olenchicks argued that Recorder Lynch's affidavit could be wrong; the Recorder's office has a duty to reject documents it

4

has reasonable cause to believe are false or fraudulent, citing R.C. 317.13; and the Recorder's office is culpable for recording a deed that was altered by a non-attorney.

{¶15} On December 11, 2018, the Olenchick brothers were deposed by counsel for the Recorder, Real Title, and Scramling. The parties never reached an agreement as to date and time for any of the defendants to be deposed, and the trial court denied motions to compel.

{¶16} On December 26, 2018, prior to the transcription of any depositions, the Olenchicks moved for summary judgment on Scramling's counterclaim. They argued that Scramling has no legal right to quiet title of Garage Unit No. 59 because no contract exists for the sale of a garage unit to Scramling. Because Scramling cannot prove ownership of Garage Unit No. 59, the Olenchicks asserted the rest of his allegations must fail.

{¶17} Transcripts of the Olenchick brothers' depositions were filed with the court on January 4, 2019.

{¶18} That day, Scramling filed a brief in opposition to the Olenchicks' motion for summary judgment and moved for summary judgment on his counterclaim. Scramling asserted that (1) Rodney has no ownership interest in Garage Unit No. 59 because there is no documentary evidence that he ever purchased it from Randy, and (2) Randy has no ownership interest because the rerecorded deed demonstrates that Scramling is the legal owner. Scramling also asserted that Randy had not paid taxes or homeowner fees on Garage Unit No. 59 since he sold the condominium to Scramling. Further, Scramling contended the Olenchicks' argument that the Purchase Agreement stated "no garage space" is precluded under the doctrine of merger by deed. Finally, Scramling argued that the "deed restrictions and the condominium by-laws" require that a garage

5

unit must be sold with a condominium unit. The document upon which Scramling relies is the "Declaration of Condominium Ownership for Bayridge Condominium." Scramling continuously argues these are deed restrictions. They are more accurately characterized as the recorded condominium bylaws, enforceable by the Owners Association.

{¶19} The Olenchicks filed their rebuttal to Scramling's motion on January 24, 2019. They asserted the doctrine of merger by deed does not preclude reformation of the deed, because the original deed contained a mistake that did not reflect the parties' agreement and the rerecorded deed was covertly altered after it was signed. Attached to their rebuttal was, inter alia, (1) the residential listing input sheet, which indicates "none" for the garage; (2) the property listing, which indicates, "Garage Feat: None"; and (3) the Purchase Agreement, which describes the property as a "1bdrm condominium, no garage space."

{¶20} On February 1, 2019, Real Title moved for summary judgment on the Olenchicks' complaint, raising several arguments that rely on the merger by deed doctrine, the condominium bylaws, and Rodney's alleged lack of standing to sue. The Olenchicks filed a brief in opposition on February 20, 2019, arguing, inter alia, that merger by deed does not apply to this matter, the rerecorded deed was fraudulent, and Real Title does not have standing to assert a legal claim as to the condominium bylaws.

{¶21} On May 16, 2019, the trial court issued an order ruling on the parties' competing motions for summary judgment. The trial court (1) granted the Recorder's motion and Real Title's motion, and dismissed them as parties to the action; (2) granted summary judgment in favor of the Olenchicks' on their claim against Scramling; (3) denied Scramling's motion as to his counterclaim; (4) granted the Olenchicks' motion as

6

to Scramling's claims for quiet title, forcible entry and detainer, trespass, conversion, declaratory judgment and injunctive relief, specific performance, ejectment, and rent; and (4) denied the Olenchicks' motion as to Scramling's claim for unjust enrichment, to the extent it sought damages for any payments Scramling made of condominium unit owners association fees and taxes attributable to Garage Unit Nos. 59 and 60.

{¶22} The trial court determined that the merger by deed doctrine (1) does not apply to the purported conveyance of Garage Unit No. 41 because it was clearly a mistake; and (2) does not apply to the purported conveyance of Garage Unit No. 59 because Randy did not sign a deed that conveyed Garage Unit No. 59 to Scramling. Thus, the court looked to parol evidence to determine the intent of the parties to the deed and held:

> The only evidence before the court as to the intent of the parties regarding the sale of a garage unit is the purchase agreement, which clearly and unambiguously states that the sale does not include a garage unit, and Randy's testimony that the sale only included the condominium unit and did not include a garage unit.

The trial court further held that the condominium bylaws do not require a garage unit to be sold with a condominium and thus rejected Scramling's argument of illegality of contract.

{¶23} The trial court concluded as follows:

> Randy did not agree to sell, and Scramling did not agree to buy, a garage unit. Further, the court finds that Randy did not convey his interest in any garage units to Scramling. Therefore, the court finds that Scramling is not the rightful owner of Garage Unit No. 59 and reformation of the deed is appropriate. Accordingly, as to the plaintiffs' claims, Scramling's motion for summary judgment is not well-taken and is hereby denied, and the plaintiffs' motion for summary judgment is well-taken and is hereby granted.
>
> Further, the court finds that there is no genuine issue of material fact and the plaintiffs are entitled to judgment as a matter of law on

7

Scramling's counterclaims for quiet title, forcible entry and detainer, trespass, conversion, declaratory judgment and injunctive relief, specific performance, ejectment, and rent and the plaintiffs' motion for summary judgment is hereby granted as to those counterclaims. Further, the plaintiffs' motion for summary judgment is hereby granted on Scramling's counterclaim for unjust enrichment as it relates to any claim for damages related to the use or possession of Garage Unit No. 59.

However, Scramling's counterclaim for unjust enrichment also seeks damages for any payments he made of condominium unit owners association fees and taxes that are attributable to Garage Unit Nos. 59 and 60. Accordingly, the plaintiffs' motion for summary judgment is hereby denied as to the counterclaim for unjust enrichment as it relates to any claim for reimbursement of taxes or fees paid relative to Garage Unit No. 59 or Garage Unit No. 60.

{¶24} The trial court issued the following instructions:

The parties are hereby ordered to take the steps necessary to reform the deed to reflect that no garage unit was transferred to Scramling. If the parties fail to take such action within 90 days, any party may file this entry with the Lake County Recorder and the Lake County Recorder and Lake County Auditor shall take the steps necessary to correct the ownership of Bayridge Condominium Garage Unit No. 59 to Randy Olenchick.

{¶25} Following summary judgment, the only issue that remained before the trial court was Scramling's claim for unjust enrichment. Scramling subsequently filed a motion for a nunc pro tunc order, requesting the trial court add Civ.R. 54(B) language that there is "no just reason for delay," so as to permit an immediate appeal of the interlocutory order. The Olenchicks opposed, and the trial court denied the motion. Scramling then filed a motion to stay enforcement of the summary judgment order pending resolution of his counterclaim, which the trial court also denied.

{¶26} On June 3, 2019, the Olenchicks filed a motion for attorney's fees, pursuant to R.C. 2323.51, with a "demand that all Defendants be held jointly and

8

severally liable for all of the Olenchicks' fees and costs."  The motion was duly opposed by each defendant and summarily denied by the trial court on July 8, 2019.

{¶27}  Finally, on January 13, 2020, an agreed judgment entry was issued by the trial court, cancelling the bench trial and dismissing with prejudice Scramling's unjust enrichment claim.   The trial court incorporated by reference its summary judgment order, rendering it a final appealable order with "no just reason for delay."

{¶28}  This appeal followed.  Scramling raises two assignments of error from the summary judgment order, which we will review in reverse order:

> [1.] The trial court committed prejudicial error in granting Plaintiffs-Appellees' motion for summary judgment, in part, and denying Defendant-Appellant's motion for summary judgment and, therefore, ordering reformation of the deed, based upon the inapplicability of the Merger by Deed Doctrine due to mutual mistake.

> [2.] The trial court erred by failing to enforce the applicable Condominium Declarations, which require the conveyance of a garage unit with the conveyance of a condominium unit.

{¶29}  An appellate court reviews a trial court's decision to grant summary judgment under a de novo standard of review, i.e., "independently and without deference to the trial court's determination."  *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711 (4th Dist.1993) (citation omitted); *see also Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  Therefore, we apply the same test as the trial court in determining whether summary judgment is appropriate.

{¶30}  "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that:

> (1) [n]o genuine issue as to any material fact remains to be litigated;
> (2) the moving party is entitled to judgment as a matter of law; and

9

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977); *see also Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992) ("Doubts must be resolved in favor of the non-moving party.").

{¶31} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

{¶32} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* If this initial burden is met, the burden shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue for trial. *Id.*, citing Civ.R. 56(E). If the nonmovant fails to do so, summary judgment will be entered against the nonmoving party. *Id.*

**The Condominium Bylaws**

{¶33} Under his second assignment of error, Scramling argues the trial court erred by failing to enforce the Declaration of Condominium Ownership for Bayridge

10

Condominium ("the Bylaws"). Scramling contends the Bylaws require the conveyance of a garage unit with the conveyance of a condominium unit, thus the portion of the Purchase Agreement that conveyed a condominium without a garage should have been severed under illegality of contract.

{¶34} The relevant portion of the Bylaws provided to the trial court states, "No garage unit shall be available for purchase except to a family unit owner or in conjunction with the ownership of a family unit." This language is unambiguous. It does not require a condominium owner to sell a garage when selling a condominium. Rather, it restricts the sale of a garage to a condominium owner (or in conjunction with the ownership of a condominium). On its face, this provision also does not preclude an owner from continuing to own a garage after selling a condominium. However, as the trial court noted: "Even assuming that the declaration precludes Randy from continuing to own a garage unit without being a family unit owner, he presumably can sell the garage unit to any owner of a condominium unit. Moreover, this provision would certainly not require Randy to convey his garage unit without any compensation therefor."

{¶35} As the language of the Bylaws does not lend itself to the construction to which Scramling subscribes, his argument must fail as a matter of law.

{¶36} Scramling's second assignment of error is without merit.

**The Doctrine of Merger by Deed**

{¶37} Under his first assignment of error, Scramling argues the trial court erred in its summary judgment order by determining the merger by deed doctrine was inapplicable due to mutual mistake and, therefore, by ordering reformation of the deed. He raises three issues for review under this assignment of error:

11

(1) Did the trial court err in determining that the Merger by Deed Doctrine did not apply to the conveyance of Garage Unit No. 59 to Defendant Appellant?

(2) Did the trial court err in determining that mutual mistake applied where Plaintiffs-Appellees failed to properly plead mutual mistake with the required particularity pursuant to Ohio Civ. R. 9?

(3) Did the trial court err in ordering reformation of the Deed?

{¶38} The doctrine of "merger by deed" denotes that, "[w]here a deed is delivered and accepted without qualification pursuant to agreement, no cause of action upon the prior agreement thereafter exists." *Fuller v. Drenberg*, 3 Ohio St.2d 109 (1965), paragraph one of the syllabus; *Westwinds Dev. Corp. v. Outcalt*, 11th Dist. Geauga No. 2008-G-2863, 2009-Ohio-2948, ¶79 (citation omitted). "'The rights of the parties must be determined by the deed so given in execution of the prior agreement[.]'" *Mayer v. Sumergrade*, 111 Ohio App. 237, 239 (8th Dist.1960), quoting 40 Ohio Jurisprudence, Section 90, at 1001. There are recognized exceptions to merger, such as fraud or mistake, or when the prior agreement creates rights collateral to the conveyance. *Id.*; *Mong v. Kovach Holdings, LLC*, 11th Dist. Trumbull No. 2012-T-0063, 2013-Ohio-882, ¶22.

The Rerecorded Deed

{¶39} Scramling first asserts that the trial court erred in determining the merger by deed doctrine did not apply to the conveyance of Garage Unit No. 59.

{¶40} The purported conveyance of Garage Unit No. 59 is included in the rerecorded deed. Crucially, the trial court did not rely on an exception to the rule when it held the merger doctrine did not apply to the rerecorded deed. Rather, the trial court held that Scramling could not rely on the doctrine because Randy did not sign the rerecorded deed, or any deed that conveyed Garage Unit No. 59 to Scramling.

12

{¶41} R.C. 5301.01(A) provides that "[a] deed * * * shall be signed by the grantor * * *. The signing shall be acknowledged by the grantor * * * before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement."

{¶42} While the signatures of Randy and his spouse appear on the document, those signatures were affixed to the deed prior to the alterations and prior to the first recording. Further, neither Randy nor Scramling initialed or otherwise acknowledged the alterations. Randy testified that he does not know who made the change, he does not know who presented the deed for rerecording, and he did not authorize the changes. There is no testimony from Scramling or any other defendant. Accordingly, the record contains no evidence that the rerecorded deed was valid.

{¶43} Moreover, the record contains no evidence that a valid contract existed for the conveyance of Garage Unit No. 59. "[As] the author of a prominent treatise notes:

> In reality, this doctrine [of merger by deed] is merely an application of the contract doctrine of integration. Under this doctrine, all prior documents are considered to be integrated into the final contract, and only the provisions contained in the final contract are part of the agreement. This doctrine is the combined result of the parol evidence rule and the rule of interpretation which seeks to determine the intentions of the parties. Thus, if it can be shown that the parties actually intended that the provisions of a prior agreement continue in force, then the provisions do so continue. Similarly, the merger doctrine should only be applied as a canon of construction that attempts to arrive at the true intention of the parties to a deed.

14 Powell on Real Property (1995) 81A–136, Section 81A.07[1][d]." *Judy Newman v. Group One*, 4th Dist. Highland No. 04CA18, 2005-Ohio-1582, ¶13.

13

**{¶44}** There is no evidence that Randy signed a deed conveying Garage Unit No. 59 to Scramling.  Thus, there is no evidence that the rerecorded deed is a valid final contract into which the Purchase Agreement must merge.  Accordingly, the trial court did not err in concluding that the doctrine of merger by deed cannot apply to the rerecorded deed.

**{¶45}** Scramling's first issue presented for review is not well taken.

<u>The Original Deed</u>

**{¶46}** Scramling next asserts the trial court erred in determining the mutual mistake exception applied because the Olenchicks failed to properly plead mistake with particularity, as required by Civil Rule 9(B).

**{¶47}** Civil Rule 9(B) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

**{¶48}** Civil Rule 9(B) must be read and applied in conjunction with the other rules of civil procedure.  For instance, a pleading states a claim for relief when it contains "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled."  Civ.R. 8(A).  Additionally, "[a] copy of any written instrument attached to a pleading is a part of the pleading for all purposes."  Civ.R. 10(C).

**{¶49}** The underlying determination of whether a short and plain statement complies with the particularity requirement is "'whether the allegation is specific enough to inform the defendant of the act of which the plaintiff complains, and to enable the defendant to prepare an effective response and defense.'"  *Meehan v. Mardis*, 1st Dist. Hamilton No. C-180406, 2019-Ohio-4075, ¶22, quoting *Baker v. Conlan*, 66 Ohio

14

App.3d 454, 458 (1st Dist.1990), citing *Haddon View Invest. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 159 (1982); *see also Butler Cty. Bd. of Commrs. v. Hamilton*, 145 Ohio App.3d 454, 471 (12th Dist.2001) ("some cases hold that Civ.R. 9(B) should not be strictly applied, even where pleadings are vague, as long as the defendant has notice of the matters about which the plaintiff complains").

{¶50} We note that the trial court found a mutual mistake occurred, but only with regard to the original deed, which purports to convey Garage Unit No. 41. The Olenchicks' complaint alleges the following facts, summarized by this court for the sake of clarity and relevance:

- In 1978, Randy purchased Condominium Unit No. 30 and Garage Unit No. 41.
- In 1981, Randy transferred Garage Unit No. 41 to a third party in exchange for Garage Unit No. 59.
- Subsequently, Randy sold to Rodney the rights to Garage Unit No. 59.
- In February 2016, Randy sold to Scramling Condominium Unit No. 30.
- The Purchase Agreement stated: "1bdrm condominium, no garage space."
- On March 4, 2016, the Lake County Recorder recorded a deed conveying Condominium Unit No. 30 and Garage Unit No. 41 to Scramling.
- On August 3, 2017, someone in the Lake County Recorder's office changed the deed to reflect Garage Unit No. 59 was instead conveyed to Scramling.
- Garage Unit No. 59 is not owned by Scramling because it was not included in the Purchase Agreement or in the original deed.
- Rodney has tried to resolve the matter with Scramling and Real Title, but they refuse to correct the deed.
- Rodney requests Real Title and the Lake County Recorder do whatever is necessary to correct the deed.

{¶51} The Olenchicks attached to their complaint a copy of the Purchase Agreement, the original deed, and the rerecorded deed. The Purchase Agreement states the contract between Randy and Scramling was for the purchase of a "1 bdrm condominium, no garage space." The original deed conveys Garage Unit No. 41 to

15

Scramling. The rerecorded deed shows a handwritten and uninitialed alteration that instead conveys Garage Unit No. 59 to Scramling.

{¶52} We conclude the Olenchicks' allegations, when read in conjunction with the written instruments attached to the complaint and incorporated therein, sufficiently pled a claim requesting reformation of the deed based on a mutual mistake of fact. It alleges the existence of a contract, but that the original deed did not reflect what the parties agreed to in that contract. It further alleges the original deed was altered by neither party to the agreement. In addition, Scramling has never argued, nor could he genuinely do so, that he was confused as to the nature of the Olenchicks' claim or the relief they requested.

{¶53} We reject Scramling's argument that the Olenchicks did not plead their claim with sufficient particularity.

Reformation of the Deed

{¶54} Finally, Scramling asserts the trial court erred in ordering reformation of the deed after determining he was not entitled to quiet title due to a mutual mistake of the parties to the original deed.

{¶55} "It is well-established that '[r]eformation of an instrument is an equitable remedy whereby a court modifies the instrument which, due to mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties.'" *Zwaryz v. Wiley*, 11th Dist. Ashtabula No. 98-A-0073, 1999 WL 689940, *2 (Aug. 20, 1999), quoting *Mason v. Swartz,* 76 Ohio App.3d 43, 50 (6th Dist.1991).

{¶56} "'Reformation is available where it is shown that the written instrument does not express the true agreement entered into between the contracting parties by reason of mistake common to them; in such a case equity affords the restorative

16

remedy of reformation in order to make the writing conform to the real intention of the parties.'" *Mong*, *supra*, at ¶21, quoting *Wagner v. Natl. Fire Ins. Co.*, 132 Ohio St. 405, 412 (1937).

{¶57} "In a suit to correct the description in a deed on the ground that, by the mutual mistake of the parties, it includes land not intended to be sold and conveyed, the proof of the mutuality of the mistake must be clear and convincing; a mere preponderance is not sufficient. No reformation of an instrument can be made that does not conform to the intention of both parties; the court cannot, by reformation, make a new contract." *Stewart v. Gordon*, 60 Ohio St. 170 (1899), paragraphs one and two of the syllabus; *accord Mong*, *supra*, at ¶21 *see also Miller v. Cloud*, 7th Dist. Columbiana No. 15 CO 0018, 2016-Ohio-5390, ¶26 (citation omitted) ("the clear and convincing standard of proof is used not only at trial to determine whether the party met their burden of proof, but it is also used to determine whether summary judgment is appropriate").

{¶58} "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Haynes*, 25 Ohio St.3d 101, 104 (1986); *Miller*, *supra*, at ¶25. Once mutual mistake is established with the requisite level of proof, parol evidence is admissible to show the parties' true agreement. *See Mong*, *supra*, at ¶21.

{¶59} Here, the trial court determined that the conveyance of Garage Unit No. 41 was a mutual mistake because the parties agreed that Randy did not own that

17

garage unit at the time of sale. Scramling contends the parties intended to convey a garage unit owned by Randy, such that the only mistake in the deed was unilateral, conveying Garage 41 instead of Garage 59. However, he provided no evidence to support this argument. As the trial court noted, "this would require the court to find that the mistaken portion of the deed itself demonstrated an intent between the parties to convey a garage unit to Scramling." Regardless, because that portion of the deed was clearly a mistake, the parties' intention regarding a garage unit must be determined by parol evidence.

{¶60} There is clear and convincing evidence in the record of the parties' true intent. The signed Purchase Agreement convincingly establishes that the parties did not intend to convey a garage unit with the condominium, as it clearly states: "1bdrm condominium, no garage space." Additional record evidence further supports a mutual mistake. Randy testified that he did not intend to convey a garage unit, he did not include a garage unit in the real estate listing, he and Scramling did not negotiate the sale of a garage unit, and his realtor assured him the sale did not include a garage unit, despite the language in the deed. There is no testimony from Scramling to dispute Randy on these matters.

{¶61} Thus, the record evidence establishes that both parties to the Purchase Agreement were fully aware that a garage unit would not be included in the transfer of property. Randy was mistaken about the terms of the conveyance when he executed the deed, and Scramling was mistaken about the terms of the conveyance in the recorded deed. The inclusion of Garage Unit No. 41 in the deed was, therefore, a mutual mistake.

{¶62} Scramling further argues that the deed should not be reformed because Randy admitted that he read the deed, knew it listed Garage Unit No. 41, knew he did not own Garage Unit No. 41, and signed the instrument anyway. However, reformation is permissible even when a party is not "'wholly free from fault,'" so long as that party's negligence is "'excusable'" and did not violate a "'positive legal duty.'" *Hartman v. Tillett*, 86 Ohio App. 20, 23 (1st Dist.1948), quoting 45 American Jurisprudence, Section 78, at 632; *accord Natl. City Real Estate Servs. LLC v. Frazier*, 4th Dist. Ross No. 17CA3585, 2018-Ohio-982, ¶30. Randy testified that his realtor had assured him the Purchase Agreement controlled the transaction, not the language in the deed, because he did not agree to sell Scramling a garage unit. Additionally, the legal duty to ensure the terms of the deed were correct belonged to the attorney that drafted the deed—not to Randy. *See Disciplinary Counsel v. Jones,* 138 Ohio St.3d 330, 2014-Ohio-809, ¶9 (citations omitted) ("The preparation of deeds for another constitutes the practice of law.").

{¶63} In sum, we conclude there is no genuine issue of fact as to the mutual mistake that occurred, and that reformation of the deed is appropriate as a matter of law. The trial court did not err in ordering reformation of the deed.

{¶64} Scramling's first assignment of error is without merit.

{¶65} The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

19