[Cite as *S.E. Baseball & Softball Assn. v. Deerfield Twp. Bd. of Trustees*, 2021-Ohio-2887.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| SOUTHEAST BASEBALL & SOFTBALL ASSOCIATION, | CASE NO. 2020-P-0079 |
| Plaintiff-Appellee/ Cross-Appellant, | Civil Appeal from the Court of Common Pleas |
| - v - | |
| DEERFIELD TOWNSHIP, BOARD OF TRUSTEES, PORTAGE COUNTY, OHIO, | Trial Court No. 2016 CV 00882 |
| Defendant-Appellant/ Cross-Appellee. | |

# O P I N I O N

Decided: August 23, 2021
Judgment: Reversed and remanded

*Chad E. Murdock*, P.O. Box 334, Rootstown, OH 44272 (For Plaintiff-Appellee/Cross-Appellant).

*Victor V. Vigluicci*, Portage County Prosecutor, and *Christopher J. Meduri*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Defendant-Appellant/Cross-Appellee).

MARY JANE TRAPP, P.J.

{¶1} Defendant-appellant/cross-appellee, Deerfield Township, Board of Trustees, Portage County, Ohio (the "board"), appeals the judgment entry of the Portage County Court of Common Pleas granting judgment to plaintiff-appellee/cross-appellant, Southeast Baseball & Softball Association (the "association"), on the association's claims

for quiet title and declaratory judgment. In its cross-appeal, the association appeals the trial court's granting of judgment to the board on its counterclaim in the amount of $80,000 plus interest at the statutory rate.

{¶2} This case involves a 10-acre public park titled in the name of Deerfield Township (the "township") that contains several ball fields used by youth baseball leagues organized by the association. The association's alleged predecessor donated the property to the township via a 2005 warranty deed for use as a public park.

{¶3} Following disputes between the parties regarding the property and a related storage building, the association purported to revoke its predecessor's donation of the property to the township and filed a lawsuit in the Portage County Court of Common Pleas asserting claims for quiet title and declaratory judgment. Among other allegations, the association alleged that the board never lawfully accepted the donation of the property in 2005 because it did not obtain prior court approval pursuant to R.C. 505.261. Following the trial court's denial of the board's motion for summary judgment regarding the property's ownership, the board filed a counterclaim seeking reimbursement for its maintenance expenses for the property since 2005.

{¶4} Following a bench trial before the magistrate, the trial court ultimately granted judgment to the association on its claims and granted judgment to the board on its counterclaim. The trial court found that the property reverted to the association as a matter of law because the board failed to obtain prior court approval required under R.C. 505.261. The trial court also found that the association owed the board the amount of $80,000 plus interest at the statutory rate to reimburse the board for the association's share of maintenance and repair expenses.

2

{¶5} The board asserts three assignments of error on appeal, contending that the trial court erred by (1) granting the association's claim for quiet title because the association lacked standing, (2) denying its motion for summary judgment regarding the property's ownership, and (3) failing to address its defense to the association's quiet title claim based on the doctrine of laches.

{¶6} The association asserts one cross assignment of error, contending that the trial court erred in finding that the association owes the board $80,000 for maintaining the land.

{¶7} After a careful review of the record and pertinent law, we find that the board's second assignment of error has merit and is dispositive. Based on the plain language of R.C. 505.261 and the warranty deed, the board was not required to obtain court approval prior to the transfer of the property. In addition, pursuant to the warranty deed and long-standing principles of real estate law, the township owns the property, including the storage building, in fee simple as a matter of law.

{¶8} Thus, we reverse the trial court's judgment denying the board's motion for summary judgment regarding the property's ownership.

{¶9} We further find that the issue of the property's ownership is dispositive of the parties' respective claims. Therefore, we necessarily reverse the trial court's grant of judgment to the association on its claims and grant of judgment to the board on its counterclaim. We remand this matter to the trial court to enter judgment in favor of the board on the association's claims and to dismiss the board's counterclaim as moot.

3

## Substantive and Procedural History

{¶10} In 1986, Deerfield Township Hot Stove League Association, Inc. ("Hot Stove") acquired ten acres of real property located in Deerfield Township, Portage County, Ohio (the "property"). Hot Stove subsequently developed the property into ball fields and a concession stand and organized youth baseball and softball teams composed of children living in Deerfield Township.

{¶11} As an all-volunteer organization, Hot Stove experienced difficulties in maintaining the ball fields and particularly in mowing the outfields. In 2004, Hot Stove approached Deerfield Township's board of trustees for assistance. Terrence Hohnhorst ("Mr. Hohnhorst"), a civil engineer and long-time township resident, acted as the intermediary between the parties.[1] Mr. Hohnhorst suggested that Hot Stove donate the property to the township to become a public park.

### The Warranty Deed and Related Documents

{¶12} Mr. Hohnhorst drafted a general warranty deed in which Hot Stove granted the property to Deerfield Township "with general warranty covenants" and "for perpetual public park lands purposes." He also drafted a "general agreement" and a "memo of understanding" relating to the property.

{¶13} The general agreement states that the township would accept the donation of the property for "permanent public park land purposes" with several specified "conditions." Specifically, the township would assume "general grounds maintenance," or "mowing," "at usual intervals normal to landscape maintenance standards" and would incur "no other costs of any kind" relating to Hot Stove's usage.

---

1. There is no indication in the record that Mr. Hohnhorst is an attorney.

4

Case No. 2020-P-0079

{¶14} Hot Stove, as the "primary beneficiary and user of the 'park,'" would contribute at least $2,500 per year toward the township's maintenance costs. Hot Stove would also be responsible for "all other special grounds maintenance items" required for "baseball game usage"; liability insurance for its baseball games; and "any other specialized requirement that may arise" from its usage.

{¶15} The general agreement further provides that Hot Stove "shall have the right to construct a building already planned for the site for use of storage of equipment and other baseball equipment related uses" and "shall have the right to continue the 'baseball field' usage as it has been for a number of years in the past." The township "shall have the right to add other facilities on the 'park land' as determined for the use of the general population of the Township as occasion may arise."

{¶16} The memo of understanding is substantially similar but contains some differences. For instance, the "conditions" of the township's acceptance are referred to as a "general understanding," and the provision that referred to Hot Stove as the "primary beneficiary and user of the 'park'" and required it to contribute $2,500 per year was removed. In addition, references to R.C. 511.32 were inserted throughout. This statutory provision relates to a board of township trustees' improvement of public parks within the township's limits.

{¶17} The relationship between the two documents is unclear from the record. Mr. Hohnhorst testified that the two documents were "very similar" and "cover most the same area" but that he prepared them concurrently. Anthony Romeo ("Mr. Romeo"), who was the president of Hot Stove in 2004, believed that the general agreement evolved into the memo of understanding.

5

{¶18} In a letter to Mr. Romeo dated November 22, 2004, Mr. Hohnhorst wrote, in relevant part, as follows:

{¶19} "Enclosed is the deed that would be filed for the donation of the land to Deerfield Township, and a copy of the memo of understanding that simply outlining [sic] the basic requirements that both parties desire to be known to all who are interested. It shows just what is expected after the transfer of the land for the New Public Park.

{¶20} "Please make the necessary motions at your next meeting and sign the deed at a notary public.

{¶21} "Then return the deed to me in the stamped envelope provided. I will file the deed for transfer of the land when all the detai[ls] are worked out and the Trustees formally accept the donation by resolution passed in their regular meeting."

{¶22} Mr. Hohnhorst's letter made no reference to the general agreement.

{¶23} In December 2004, Hot Stove's officers signed the warranty deed, and Mr. Hohnhorst recorded it at the Portage County Recorder in January 2005. The parties never signed the general agreement or the memo of understanding, and neither document was recorded.

{¶24} In 2005, Hot Stove constructed the storage building with minimal improvements. Shortly thereafter, at Hot Stove's request, the township dug a trench to connect the electrical line from the concession stand to the storage building. Until 2013, a portion of the storage building was used to store some equipment and tools, while the rest remained vacant.

6

Case No. 2020-P-0079

### Maintenance and Improvements

{¶25} According to Ed Dean, a township trustee ("Trustee Dean"), the township expended approximately $168,580 since 2005 to maintain and insure the property, including its improvements and buildings, often at Hot Stove's request.

{¶26} Prior to 2013, the board of trustees authorized expenditures for limited improvements to the storage building. In 2013, the township's insurance company raised concerns regarding the storage building's deteriorated state. As a result, the board authorized expenditures for significant improvements and began using it to store township equipment. According to Trustee Dean, the board informed Hot Stove that it was permitted to store baseball equipment in the building but that it would need to contact the trustees to obtain access.

### The Parties' Disputes

{¶27} In 2013 or 2014, Hot Stove merged with another organization to form Southeast Baseball & Softball Association (the "association"), which organized youth baseball and softball teams composed of children living in the townships of Deerfield, Charlestown, Palmyra, and Paris. Stephanie Barringer ("Ms. Barringer") became the association's president.

{¶28} At one point, Ms. Barringer was informed that the park's electricity had been shut off for nonpayment of electric bills. She contacted the association's treasurer and paid the outstanding amount. In looking into the matter, she discovered that the concession stand's electrical line was connected to the storage building and concluded that the association had been paying for the township's use of electricity.

7

{¶29} Ms. Barringer also began to question the township's legal ownership of the storage building. She suspected that a prior Hot Stove board member may have transferred ownership of the building to the township without proper authorization. Ms. Barringer envisioned the association having exclusive possession of the building for future use as an indoor practice facility for the leagues.

{¶30} In September 2015, Ms. Barringer, on behalf of the association, sent a letter to the board requesting reimbursement for prior electric bills relating to the storage building and documentation establishing the township's ownership. If no documentation was produced, she requested that the township vacate the storage building within 30 days.

{¶31} According to the board, a former president of Hot Stove had installed the electrical lines to the storage building and instated electricity services. Further, the state auditor had informed the township that it could not pay another entity's electric bill.

{¶32} In addition, the storage building was partially completed after the township took over ownership of the property. After sitting vacant for several years, the board made improvements to the building to store township equipment. Based on the board's discussions with the township's insurance company, the county building officer, and the township fire chief, it was decided that the storage building, as currently constructed, could not be used as an indoor sports facility.

{¶33} The association retained legal counsel, who sent two letters to the township requesting meetings to resolve the association's issues.

{¶34} In September 2016, the township removed two of the five existing ball fields from the property. According to the board, two factors motivated this decision. First, they

8

were informed that grant funding was more available for a multi-purpose park. Mr. Hohnhorst prepared an engineering study of proposed uses of the property, which included soccer and lacrosse fields. Second, the township's insurance company had reported concerns about the dangerous condition of the ball field fencing. The board obtained a quote for the necessary fence repairs, which totaled over $9,000, and submitted it to the association. The association indicated that it would make the repairs but never did.

{¶35} Following the township's removal of the two ball fields, the association's counsel sent a letter to the township contending that pursuant to R.C. 505.261, the township had been required to obtain approval from the common pleas court before accepting Hot Stove's donation of the property via the 2005 warranty deed. Since the township did not do so, it never accepted the donation. Therefore, the association, as Hot Stove's successor, purported to revoke the donation and requested the township's delivery of a deed.

### The Complaint and Counterclaim

{¶36} In September 2016, the association filed a complaint against the board of trustees in the Portage County Court of Common Pleas.

{¶37} In count one (declaratory judgment), the association alleged that a controversy exists under the warranty deed and the general agreement regarding the parties' rights and duties to the property and the storage building. Although the association did not expressly reference the memo of understanding, it attached both the general agreement and the memo of understanding to its complaint as "Exhibit B."

9

{¶38} The association sought declarations that the property may only be used for public park purposes; the association has a right to use the building as set forth in the general agreement and in accordance with past practice; and the parties' rights and obligations to the property and building are as set forth in the general agreement and as determined by the trial court.

{¶39} In count two (quiet title), the association alleged that it was the rightful owner of the property because the board did not obtain approval from the common pleas court pursuant to R.C. 505.261 before accepting it and because the association, as the successor to Hot Stove, subsequently revoked the gift. Thus, the association sought, "in the alternative," a declaration that it was the true and lawful owner of the property and that its title be quieted against any claim or interest of the township.

{¶40} The board filed an answer denying the material allegations of the association's complaint and asserting several affirmative defenses. The board admitted that it did not seek prior court approval for the transfer of the property.

{¶41} The parties participated in mediation on two separate occasions, both of which were unsuccessful.

{¶42} The association filed a motion for summary judgment on its quiet title claim. The board filed a response in opposition and cross-motion for summary judgment on the issue of the property's ownership. The association filed a reply and a response, and the board filed a surreply.

{¶43} On July 21, 2017, the trial court filed a judgment entry overruling both parties' motions for summary judgment, finding that there were genuine issues of material fact in dispute and that neither party was entitled to judgment as a matter of law.

10

{¶44} Upon the board's motion, the trial court permitted it to file an amended answer and a counterclaim. In its counterclaim, the board sought reimbursement from the association for all amounts expended for the upkeep and maintenance of the property since 2005, including, without limitation, $168,580, in the event the trial court determined that the township was not the legal owner of the property, and all outstanding annual payments of $2,500 required under the general agreement, in the event the trial court determined that the general agreement was enforceable and that the association was Hot Stove's successor.

{¶45} The association filed an answer denying the material allegations of the township's counterclaim and asserting several affirmative defenses.

### Bench Trial

{¶46} In August 2018, the matter proceeded to a bench trial before the magistrate. The association presented testimony from Mr. Romeo and Ms. Barringer. As exhibits, the association submitted copies of the warranty deed, the general agreement, the memo of understanding, Mr. Hohnhorst's 2004 letter to Mr. Romeo, and the building permit for the storage building.

{¶47} The board presented testimony from Mr. Hohnhorst and from the trustees. As exhibits, the township submitted photographs depicting the conditions of the ball fields and copies of township minutes, warrants, and invoices relating to park expenditures.

{¶48} The association presented rebuttal testimony from Ms. Barringer.

{¶49} Following the bench trial, both parties filed proposed findings of fact and conclusions of law.

11

{¶50} On December 26, 2019, the magistrate filed a decision in which it set forth numerous findings; granted judgment to the association on its claim for quiet title and declaratory judgment; and granted judgment to the board on its counterclaim in the amount of $80,000 plus interest at the statutory rate.

{¶51} On the same date, the trial court filed a judgment entry in which it adopted the magistrate's decision in whole and without modification and granted judgment as set forth in the magistrate's decision.

{¶52} Both sides filed objections to the magistrate's decision.

*The Trial Court's Judgment Entry*

{¶53} On September 16, 2020, the trial court filed a judgment entry in which it reiterated its granting of judgment to the association on its claims for quiet title and declaratory judgment and to the board on its counterclaim in the amount of $80,000 plus interest at the statutory rate.

{¶54} With respect to the association's claims, the trial court determined that R.C. 505.261 governed Hot Stove's donation of the property to the township because it "deals specifically with donations of land to townships for use as a park as opposed to donations of land in general to the township." As a specific, more-recently enacted statute, it prevailed over the general terms of R.C. 9.20 and R.C. 505.10 under the rules of statutory construction. Pursuant to the specific language of R.C. 505.261, court approval was a "condition precedent" to the board's acceptance of the donation. The board did not obtain the common pleas court's prior approval of the donation or any related documentation. Therefore, the association, as the "undisputed successor" to Hot Stove, was entitled to judgment on its claims for quiet title and declaratory judgment.

12

{¶55} With respect to the board's counterclaim, the trial court determined that the invoices submitted at trial showed expenditures slightly in excess of $50,000 for the "actual permanent improvement" of the property. Since the property reverted to the association as a matter of law, those improvements now solely benefitted the association. In addition, the association did not contribute $2,500 per year toward the township's maintenance costs pursuant to the parties' arrangement, which, over 15 years, amounted to $30,000.

{¶56} The board appealed the trial court's September 16, 2020, judgment entry and now presents the following three assignments of error:

{¶57} "[1.] The trial court erred as a matter of law in granting the Southeast Association's claim for quiet title because the Southeast Association lacked standing to bring a quiet title action.

{¶58} "[2.] The trial court erred as a matter of law in denying Deerfield Township's motion for summary judgment.

{¶59} "[3.] The trial court abused its discretion in disregarding the defense of the doctrine of laches."

{¶60} The association filed a cross-appeal of the trial court's judgment entry and presents the following assignment of error:

{¶61} "The trial court committed prejudicial error in finding that Southeast Baseball owes Deerfield $80,000 for maintaining the land."

**Summary Judgment**

{¶62} We first address the board's second assignment of error since it is dispositive.

13

{**¶63**} In its second assignment of error, the board contends that the trial court erred in denying its motion for summary judgment regarding the property's ownership.

### *Moot or Harmless*

{**¶64**} As an initial matter, we note that the Supreme Court of Ohio has held that "[a]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 642 N.E.2d 615 (1994), syllabus. However, the court expressly stated that its holding had no effect on cases involving "pure questions of law." *Id.* at 159.

{**¶65**} Courts have held that error in the denial of a summary judgment motion that presents a purely legal question is not rendered moot by a subsequent trial on the merits. *Capella III, L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, 940 N.E.2d 1026, ¶ 14 (10th Dist.). Thus, an appellate court may review a denial of a motion seeking summary judgment on a pure question of law regardless of the movant's lack of success at trial. *Id.*

{**¶66**} In this case, determining the property's ownership did not depend on disputed issues of material fact but instead on the construction of statutory authority and the warranty deed, which are questions of law. *See Riedel v. Consol. Rail Corp.*, 125 Ohio St.3d 358, 2010-Ohio-1926, 928 N.E.2d 448, ¶ 6 ("[I]nterpretation of statutory authority * * * is a question of law * * *"); *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus ("The construction of written contracts and instruments of conveyance is a matter of law").

14

{¶67} Therefore, we conclude that the subsequent bench trial did not render the board's second assignment of error harmless or moot.

### Standard of Review

{¶68} This court reviews the grant or denial of summary judgment de novo. *Deluca v. Aurora*, 144 Ohio App.3d 501, 508, 760 N.E.2d 880 (11th Dist.2001). A de novo review requires an appellate court to review a trial court's decision independently and without deference. *Id.* Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 36. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. *Id.*

### Inter Vivos Gift

{¶69} On summary judgment, the board contended that Hot Stove's transfer of the property constituted a valid inter vivos gift.

{¶70} "An inter vivos gift occurs when the donor executes an immediate voluntary, gratuitous, and irrevocable transfer of property to the donee." *Gallo v. Gallo*, 11th Dist. Lake No. 2000-L-208, 2002-Ohio-2815, ¶ 28. "The elements of an inter vivos gift are (1) the intent of the donor to make an immediate gift; (2) the delivery of the property to the donee; and (3) acceptance of the gift by the donee after the donor has relinquished control of the property." *Id.*

{¶71} The parties' dispute involves the third element, i.e., the board's acceptance of the gift.

15

{¶72} Ordinarily, acceptance of a gift is presumed. *Andrews v. Ohio State Teachers Retirement Sys. Bd.*, 62 Ohio St.2d 202, 205, 404 N.E.2d 747 (1980). "'In general, any gift by deed, will, or otherwise, is supposed prima facie, unless the contrary appears, to be beneficial to the donee. Consequently[,] the law presumes, until there is proof to the contrary, that every gift, whether in trust or not, is accepted by the person to whom it is expressed to be given.'" *Id.*, quoting *Harvey v. Gardner*, 41 Ohio St. 642, 649 (1885).

{¶73} On summary judgment, the association contended that the board did not lawfully accept Hot Stove's donation of the property because the board did not comply with following provision in R.C. 505.261:

{¶74} "In furtherance of the use and enjoyment of the park lands controlled by it, the board may accept donations of money or other property, or may act as trustees of land, money, or other property, and use and administer them as stipulated by the donor, or as provided in the trust agreement. The terms of each donation or trust shall first be approved by the court of common pleas before acceptance by the board."

{¶75} The association argued that R.C. 505.10 and R.C. 505.261 both authorize a board of township trustees to accept a donation of property. However, these statutes are in conflict because R.C. 505.10 does not require court approval prior to a board's acceptance while R.C. 505.261 does. Under the rules of statutory construction, R.C. 505.261 controls because it is a specific statute that was enacted later in time. Since it is undisputed that the board did not obtain prior court approval of Hot Stove's donation of the property, the board did not lawfully accept it prior to the association's revocation.

{¶76} The board argued that the provision does not provide the exclusive basis for a board of township trustees' acceptance of a donation of property. According to the board, R.C. 9.20 and R.C. 505.10 also authorize a board of township trustees to accept a donation of property, and neither provision requires prior court approval.

{¶77} Both the magistrate and the trial court ultimately adopted the association's legal position following the bench trial.

{¶78} Therefore, the issue before us is whether R.C. 505.261 governed the board's acceptance of Hot Stove's donation of the property.

***The Board's Statutory Authority***

{¶79} It is a well-settled rule of statutory interpretation that statutory provisions be construed together and that the Revised Code be read as an interrelated body of law. *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 11. Therefore, it is necessary to review the relevant statutes involving a board of township trustees' authority.

{¶80} In Ohio, "'townships are creatures of the law and have only such authority as is conferred on them by law.'" *Drees Co. v. Hamilton Twp.*, 132 Ohio St.3d 186, 2012-Ohio-2370, 970 N.E.2d 916, ¶ 13, quoting *State ex rel. Schramm v. Ayres*, 158 Ohio St. 30, 33, 106 N.E.2d 630 (1952). As the township's governing body, a board of township trustees is delegated various powers and duties by statute related to the government of the township, including R.C. Chapter 505, which sets forth the general administrative powers and duties of the board. 2000 Ohio Atty.Gen.Ops. No. 2000-025.[2]

---

2. Opinions released by the Ohio Attorney General are not binding but are considered persuasive authority. *State ex rel. North Olmsted Fire Fighters Assn. v. North Olmsted*, 64 Ohio St.3d 530, 533, 597 N.E.2d 136 (1992).

17

Case No. 2020-P-0079

{¶81} A township has express authority to accept, through the board of township trustees, the donation of real or personal property for any township use. 1991 Ohio Atty.Gen.Ops. No. 91-056. R.C. 505.10(A) provides, in relevant part, that "[t]he board of township trustees may accept, on behalf of the township, the donation by bequest, devise, deed of gift, or otherwise, of any real or personal property for any township use." *See also* R.C. 9.20, R.C. 503.01, and R.C. 511.11.

{¶82} Various statutes authorize a board of township trustees to acquire real property for the establishment of parks. 2003 Ohio Atty.Gen.Ops. No. 2003-40, fn. 1. For instance, R.C. 505.26 provides, in relevant part, that "[t]he board of township trustees may purchase, appropriate, construct, enlarge, improve, rebuild, repair, furnish, and equip * * * a township park, * * * and such board may acquire sites by lease or otherwise for any of such improvements, including lands and buildings for recreational purposes."

{¶83} R.C. 505.261 provides, in relevant part, that "[a] board of township trustees may acquire suitable lands and materials, including landscape planting and other site improvement materials and playground, athletic, and recreational equipment and apparatus, to establish a township park pursuant to section 505.26 of the Revised Code * * *." *See also* R.C. 755.12.

{¶84} As this court has recognized, "R.C. 505.26 confers upon a board of township trustees the power to establish a township park. Such board may acquire whatever land and buildings it deems appropriate for the purpose of creating the park." *Mecca For Fair Govt. v. Mecca Twp. Bd. of Trustees*, 123 Ohio App.3d 610, 613, 704 N.E.2d 1270 (11th Dist.1997).

18

Case No. 2020-P-0079

## Analogous Statutory Provisions

{¶85} The construction of the provision at issue in R.C. 505.261 appears to be a matter of first impression.

{¶86} We note that a similar provision appears in R.C. 511.23(C) in relation to a township park district. A former version of this statute contained a nearly identical provision, as follows:

{¶87} "In furtherance of the use and enjoyment of the lands controlled by it, the board may accept donations of money or other property, or may act as trustees of land, money, or other property, and use and administer the same as stipulated by the donor, or as provided in the trust agreement. The terms of each such donation or trust shall first be approved by the court of common pleas of the county * * *." H.B. No. 717, 1990 Ohio Laws 252.

{¶88} In *White v. Del Layne, Inc.*, 2d Dist. Montgomery No. 4918, 1975 WL 181794 (Dec. 4, 1975), the Second District Court of Appeals construed former R.C. 511.23 in the context of a similar dispute.

{¶89} In *White*, the appellants filed suit against a township park district and a land developer seeking to set aside a deed from the developer to the park district for 25 acres of land. *Id.* at *1. The appellants contended that when they purchased their lots, the developer promised them a "neighborhood" park. *Id.* However, the park district planned a "community wide park" to serve the city and township within the park district, which, at times, would permit the park's playing fields to be used for organized games and leagues to the exclusion of the appellants' free and uninterrupted use. *Id.*

19

{¶90} The appellants argued that R.C. 511.23 required the park district board to obtain approval by the common pleas court before it could acquire or develop land for park uses. The Second District found "no merit" to the appellants' argument:

{¶91} "The provision relied upon expressly relates to gifts of money or other property '(I)n furtherance of the use and enjoyment of the lands (already) controlled by it...' This applies to gifts to improve existing park lands. It permits the Park Commissioners to act as trustees to manage such donations so that the funds may be utilized for park lands. Since gifts often are in the form of trusts or endowments, and sometimes include unfavorable or improbable conditions[,] [t]he Park Commissioners, serving as trustees, cannot accept the gift or commence to serve as trustees for such special fund unless first approved by the Court of Common Pleas. This is a common provision designed to protect the public and the trustees from restrictive gifts.

{¶92} "The gifts referred to here are those exclusively for the use and enjoyment of existing park lands. The reference here has no application to acquisition of park lands. Acquisition of park lands is otherwise provided for in several ways, including appropriating. Revised Code 511.24." *Id.* at *2.

{¶93} A similar provision also appears in R.C. 1545.11 in relation to a county park district:

{¶94} "The board of park commissioners may acquire lands either within or without the park district for conversion into forest reserves and for the conservation of the natural resources of the state, including streams, lakes, submerged lands, and swamplands, and to those ends may create parks, parkways, forest reservations, and other reservations and afforest, develop, improve, protect, and promote the use of the

20

same in such manner as the board deems conducive to the general welfare. Such lands may be acquired by such board, on behalf of said district, (1) by gift or devise, (2) by purchase for cash, by purchase by installment payments with or without a mortgage, by entering into lease-purchase agreements, by lease with or without option to purchase, or, (3) by appropriation. *In furtherance of the use and enjoyment of the lands controlled by it, the board may accept donations of money or other property, or may act as trustees of land, money, or other property, and use and administer the same as stipulated by the donor, or as provided in the trust agreement. The terms of each such donation or trust shall first be approved by the probate court before acceptance by the board.*" (Emphasis added.)

{¶95} The Ohio Attorney General's Office discussed R.C. 1545.11 in an advisory opinion. *See* 1994 Ohio Atty.Gen.Ops. No. 94-034. The attorney general construed the statute as granting the board three areas of authority: (1) "general authority to 'create parks, parkways, forest reservations, and other reservations and afforest, develop, improve, protect, and promote the use of the same in such manner as the board deems conducive to the general welfare'"; (2) "express authority to acquire park lands by gift, devise, purchase, or appropriation"; and (3) "authority to accept money for park purposes." *Id.* Thus, similar to the *White* court, the attorney general construed the latter provision as a separate grant of authority from the board's acquisition of park lands.

### *Construction of the Statutory Authority*

{¶96} In construing the relevant statutes together, we conclude that a board of township trustees has express authority pursuant to R.C. 505.10(A), R.C. 505.26, and R.C. 505.261 to acquire land to establish a township park, including acceptance of a

21

donation of land for such a purpose. These statutes do not require the board to obtain prior court approval.

{¶97} Pursuant to the additional provision in R.C. 505.261, a board may accept donations of "money or other property" or act as trustees to administer "land, money, or other property" and use and administer them for the purpose of enhancing park lands under its control. A board is expressly required to obtain prior court approval of any terms accompanying these types of donations or trusts.

### *Application of the Statutory Authority*

{¶98} Based on the foregoing construction, the provision at issue in R.C. 505.261 was not applicable to Hot Stove's transfer of the property.

{¶99} Here, Hot Stove's donation of the property was not "[i]n furtherance of the use and enjoyment of the park lands controlled by" the board. R.C. 505.261. As in *White*, *supra*, the property transfer involved the board's acquisition of land to establish a township park, not to enhance existing park lands under its control. As indicated, a board's acquisition of park land is addressed in R.C. 505.10(A), R.C. 505.26, and a separate provision of R.C. 505.261, none of which require prior court approval.

{¶100} In addition, while the property certainly qualifies as "land," the plain language of the warranty deed demonstrates that Hot Stove did not transfer the property to the board "as trustees of land" to "use and administer * * * as provided in the trust agreement." R.C. 505.261.

{¶101} The first rule of deed construction in Ohio is that when the parties' intention is clear from the four corners of the deed, the court will give effect to that intention.

22

*Koprivec v. Rails-to-Trails of Wayne Cty.*, 153 Ohio St.3d 137, 2018-Ohio-465, 102 N.E.3d 444, ¶ 29.

{¶102} Pursuant to the warranty deed, Hot Stove granted the property to the township "with general warranty covenants." The words "general warranty covenants" mean that "[t]he grantor covenants with the grantee, his heirs, assigns, and successors, that he is lawfully seized in fee simple of the granted premises; that they are free from all encumbrances; that he has good right to sell and convey the same, and that he does warrant and will defend the same to the grantee and his heirs, assigns, and successors, forever, against the lawful claims and demands of all persons." R.C. 5302.06. "A fee simple is the highest right, title and interest that one can have in land. It is the full and absolute estate in all that can be granted." *Masheter v. Diver*, 20 Ohio St.2d 74, 253 N.E.2d 780 (1969), paragraph one of the syllabus.

{¶103} The warranty deed further states that Hot Stove's grant was "for perpetual public park lands purposes." The Supreme Court of Ohio has held that "this kind of language simply describes the reason for the conveyance." *Koprivec* at ¶ 32. "'Unless a conditional estate is created by the express language of a deed * * *, the grantor * * * will be conclusively presumed to have intended a fee simple.'" *Id.*, quoting 2 *Thompson on Real Property*, Section 17.07, at 398.

{¶104} Since there are no express conditions in the language of the warranty deed, Hot Stove transferred the property to the township in fee simple as a matter of law.

{¶105} Our construction of the warranty deed is not altered by the terms of the general agreement or the memo of understanding.

23

{¶106} The Supreme Court of Ohio has held that "'[i]n order to engraft a trust upon an absolute deed, the declaration of such trust must be contemporaneous with the deed, and the evidence relied upon must be clear, certain and conclusive and must establish the existence of the trust beyond a reasonable doubt.'" *Gammarino v. Hamilton Cty. Bd. of Revision*, 84 Ohio St.3d 155, 158, 702 N.E.2d 415 (1998), quoting *Hill v. Irons*, 160 Ohio St. 21, 113 N.E.2d 243 (1953), paragraph one of the syllabus. "'[T]he burden of proving the existence of a trust rests on the person asserting it.'" *Id.*, quoting *Hill* at 29.

{¶107} The association never alleged that the general agreement or the memo of understanding created a trust, much less that these unsigned, unrecorded, and sometimes conflicting documents constitute "clear, certain and conclusive" evidence establishing the existence of a trust "beyond a reasonable doubt." *Gammarino* at 158.

{¶108} The Supreme Court of Ohio has also long recognized the doctrine of "merger by deed," which holds that "[w]here a deed is delivered and accepted without qualification pursuant to agreement, no cause of action upon the prior agreement thereafter exists." *Fuller v. Drenberg*, 3 Ohio St.2d 109, 209 N.E.2d 417 (1965), paragraph one of the syllabus. Thus, "upon closing of a real estate transaction, the parties are limited to the express covenants in the deed." *Westwinds Dev. Corp. v. Outcalt*, 11th Dist. Geauga No. 2008-G-2863, 2009-Ohio-2948, ¶ 80. "'"This doctrine is the combined result of the parol evidence rule and the rule of interpretation which seeks to determine the intentions of the parties."'" *Olenchick v. Scramling*, 11th Dist. Lake No. 2020-L-018, 2020-Ohio-4111, ¶ 43, quoting *Newman v. Group One*, 4th Dist. Highland No. 04CA18, 2005-Ohio-1582, ¶ 13, quoting 14 Powell on Real Property 81A-136, Section 81A.07(1)(d).

24

{¶109} There is a narrow exception to the merger doctrine applicable to agreements that are collateral to, i.e., outside, the conveyance. *Westwinds Dev. Corp.* at ¶ 82. "Provisions in the contract that are collateral to and therefore independent of the main purpose of the transaction are not merged in the deed." *Id.* "An agreement is collateral if it does not concern the title, occupancy, size, enjoyment, possession, or quantity of the parcel of land conveyed." *Id.* "If the agreements concern the use or enjoyment of the land, they are not collateral to the purchase agreement and are merged upon acceptance of the deed." *Id.*

{¶110} Here, the general agreement and the memo of understanding address the proposed conveyance as well as the future use and enjoyment of the land. Therefore, they do not constitute collateral agreements, and they merged into the warranty deed.

{¶111} Our construction of the warranty deed is also not altered by Hot Stove's subsequent construction of the storage building on the property.

{¶112} "Real property," "realty," and "land" for purposes of taxation include the "land itself" and, unless otherwise specified by statute, "all buildings, structures, improvements, and fixtures of whatever kind on the land, and all rights and privileges belonging or appertaining thereto." R.C. 5701.02(A). A "building" is "a permanent fabrication or construction, attached or affixed to land, consisting of foundations, walls, columns, girders, beams, floors, and a roof, or some combination of these elemental parts, that is intended as * * * a shelter for tangible personal property, and that has structural integrity independent of the tangible personal property, if any, it is designed to shelter." R.C. 5701.02(B)(1).

{¶113} Thus, once constructed, the storage building became part of the property.

25

{¶114} In sum, the provision at issue in R.C. 505.261 was not applicable to Hot Stove's transfer of the property. Therefore, the board was not required to obtain court approval prior to acceptance of the transfer. Pursuant to the warranty deed and long-standing principles of real estate law, the township owns the property, including the storage building, in fee simple as a matter of law.

{¶115} Accordingly, the trial court erred in its July 21, 2017, judgment entry by denying the board's motion for summary judgment regarding the property's ownership. The board's second assignment of error has merit, and the trial court's judgment is reversed.

### *Disposition*

{¶116} "'Upon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred.'" *State ex rel. Douglas v. Burlew*, 106 Ohio St.3d 180, 2005-Ohio-4382, 833 N.E.2d 293, ¶ 11, quoting *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113, 431 N.E.2d 324 (1982).

{¶117} Further, App.R. 12(B) provides, in relevant part, that "[w]hen the court of appeals determines that the trial court committed error prejudicial to the appellant and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and render the judgment or final order that the trial court should have rendered, or remand the cause to the court with instructions to render such judgment or final order."

{¶118} The error in this case occurred when the trial court denied the board's motion for summary judgment regarding the property's ownership. That judgment has

26

been reversed. We further find that the issue of the property's ownership is dispositive of the parties' respective claims.

{¶119} Specifically, in count one of its complaint (declaratory judgment), the association sought a declaration that the property may only be used for public park purposes and declarations regarding its rights under the general agreement. In its counterclaim, the board sought all outstanding annual payments required under the general agreement *in the event* the trial court determined that the general agreement was enforceable and that the association was Hot Stove's successor.

{¶120} In count two (quiet title), the association sought a declaration that it was the true and lawful owner of the property and that its title be quieted against any claim or interest of the township. In its counterclaim, the board sought reimbursement from the association *in the event* the trial court determined that the township was not the legal owner of the property.

{¶121} There is no dispute that the property must be used as a public park. In addition, we have found as matters of law that the township owns the property, including the building, in fee simple and that the general agreement and the memo of understanding merged into the warranty deed. The issue of whether the association legally qualifies as Hot Stove's successor becomes moot.

{¶122} Therefore, we necessarily reverse the trial court's judgment entries of December 26, 2019, and September 16, 2020, in which it granted judgment to the association on its claims and granted judgment to the board on its counterclaim. On remand, the trial court shall enter judgment in favor of the board on the association's claims and dismiss the board's counterclaim as moot.

27

{¶123} Based on our disposition of the board's second assignment of error, the board's first and third assignments of error and the association's cross-assignment of error are moot pursuant to App.R. 12(A)(1)(c).

{¶124} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is reversed, and this matter is remanded for proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.